**KEVIN J. CONYNGHAM (0135)**
**ZIMMERER, MURRAY & CONYNGHAM**
Park 80 West, Plaza One
Saddle Brook, NJ 07663
Tel. (201) 845-7077
**Attorneys for Defendants/counterclaimants and third-party plaintiffs, OGK America, Inc. & Yale Kim a/k/a Youngil Kim**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OTOS TECH CO., LTD., <br><br> Plaintiff, <br><br> vs. <br><br> OGK AMERICA, INC. & YALE KIM A/K/A YOUNGIL KIM, <br><br> Defendants/Third-Party Plaintiffs <br><br> vs. <br><br> OTOS OPTICAL CO., LTD., and MOON YOUNG HUH <br><br> Third-Party Defendants. | CIVIL ACTION NO: 03-1979 <br><br> Hon. William H. Walls, U.S.D.J. <br><br> ANSWER, COUNTERCLAIM and THIRD-PARTY COMPLAINT <br><br>  <br> JUL 16 2003 |

The defendants, OGK America, Inc. & Yale Kim a/k/a Youngil Kim, by way of Answer to the Complaint filed herein says:

## JURISDICTION AND VENUE

1. The defendants admit the allegations contained in Paragraph 1.

2. The defendants deny the allegations contained in Paragraph 2.

3. The defendants admit the allegations contained in Paragraph 3.

4. The defendants admit the allegations contained in Paragraph 4.

5. The defendants admit the allegations contained in Paragraph 5.

## FACTUAL BACKGROUND

6. The defendants admit the allegations contained in Paragraph 6.

7. The defendants admit the allegations contained in Paragraph 7.

8. The defendants deny the allegations contained in Paragraph 8.

9. The defendants admit the allegations of Paragraph 9.

10. The defendants deny the allegations contained in Paragraph 10.

11. The defendants deny the allegations contained in Paragraph 11.

12. The defendants deny the allegations contained in Paragraph 12.

13. The defendants deny the allegations contained in Paragraph 13.

14. The defendants deny the allegations contained in Paragraph 14.

15. The defendants deny the allegations contained in Paragraph 15.

16. The defendants deny the allegations contained in Paragraph 16.

17. The defendants deny the allegations contained in Paragraph 17.

18. The defendants neither admit nor deny the allegations of Paragraph 18 and leave the plaintiff to its proof thereof.

19. The defendants deny the allegations contained in Paragraph 19.

20. The defendants deny the allegations contained in Paragraph 20.

21. The defendants deny the allegations contained in Paragraph 21.

22. The defendants deny the allegations contained in Paragraph 22.

23. The defendants deny the allegations contained in Paragraph 23.

24. The defendants neither admit nor deny the allegations of Paragraph 24 and leave the plaintiff to its proof thereof.

25. The defendants deny the allegations contained in Paragraph 25.

26. The defendants deny the allegations contained in Paragraph 26.

27. The defendants neither admit nor deny the allegations of Paragraph 27 and leave the plaintiff to its proof thereof.

## AS TO THE FIRST COUNT

(Embezzlement)

28. The defendants repeat and make a part hereof its answers to each and every allegation contained in the Jurisdiction and Venue and Factual Background sections of the Complaint as if set forth at length herein.

29. The defendants deny the allegations contained in Paragraph 29.

## AS TO THE SECOND COUNT

(Goods Sold)

30. The defendants repeat and make a part hereof its answers to each and every allegation contained in the Jurisdiction and Venue and Factual Background sections and the First Count of the Complaint as if set forth at length herein.

31. The defendants deny the allegations contained in Paragraph 31.

32. The defendants admit the allegations contained in Paragraph 32.

33. The defendants deny the allegations contained in Paragraph 33.

## AS TO THE THIRD COUNT

(Breach of Contract)

34. The defendants repeat and make a part hereof its answers to each and every allegation contained in the Jurisdiction and Venue and Factual Background sections, and the First and Second Counts of the Complaint as if set forth at

length herein.

35. The defendants deny the allegations contained in Paragraph 35.

## AS TO THE FOURTH COUNT

### (Conversion)

36. The defendants repeat and make a part hereof its answers to each and every allegation contained in the Jurisdiction and Venue and Factual Background sections, and the First, Second and Third Counts of the Complaint as if set forth at length herein.

37. The defendants deny the allegations contained in Paragraph 37.

## FIRST SEPARATE DEFENSE

Plaintiff's claims are barred by virtue of failure of consideration.

## SECOND SEPARATE DEFENSE

Plaintiff's claims are barred by its own bad faith.

## THIRD SEPARATE DEFENSE

Plaintiff's claims are barred by the doctrine and accord and satisfaction.

## FOURTH SEPARATE DEFENSE

The defendants have breached no contract with plaintiff.

## FIFTH SEPARATE DEFENSE

Plaintiff's claims are barred by his prior acts.

## SIXTH SEPARATE DEFENSE

Plaintiff, having failed to perform conditions precedent, is barred from recovery from the defendants.

## SEVENTH SEPARATE DEFENSE

Plaintiff's claims are barred by its own fraud.

## EIGHTH SEPARATE DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel and laches.

## NINTH SEPARATE DEFENSE

Plaintiff's claims are barred by waiver.

## COUNTERCLAIM

OGK America, Inc. and Youngil Kim, by way of counterclaim, set forth the following:

## JURISDICTION AND VENUE

1. OGK America, Inc. ("OGK America") is a corporation of the State of New Jersey with its principal place of business located at Suite 303, 111 Charlotte Place, Englewood Cliffs, New Jersey.

2. Youngil Kim ("Kim") is the president and a shareholder of OGK America, Inc., and has his principal place of business at Suite 303, 111 Charlotte Place, Englewood Cliffs, New Jersey.

3. Otos Tech Co. Ltd. ("Otos") is a Korean corporation with its principal place of business in Seoul, Korea.

4. This court has original jurisdiction over this counterclaim pursuant to 28 U.S.C. Sect. 1332 (a) because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and the plaintiff and defendants are citizens of different states.

5. Venue is proper in this court pursuant to 28 U.S.C. Sect. 1391 (a) and (c).

## FACTUAL BACKGROUND

6. Otos was established in approximately 1987 and is in the business of

manufacturing eye protection including safety spectacles, goggles, face shields and an auto darkening welding helmet.

7. In approximately 1993, OGK America was approached by Moon Young Huh ("Huh"), president and shareholder of Otos. At that time, Huh did not speak English and he needed assistance in the United States to introduce to the market the Otos auto darkening welding helmet. At the time OGK America was approached by Huh, Otos Tech Co., Ltd., known at the time under the name of its parent company, Otos Optical Co. Ltd., did not have a market presence outside of Korea. Its domestic sales in Korea were less than $500,000.00 per year at that time.

8. From 1993 to 1996, OGK America made extensive efforts to develop the United States market for the distribution and sale of auto darkening welding helmets manufactured by Otos. Kim researched the United States market, attended trade shows, including the National Safety Exhibition, and made other significant efforts to market the product. In addition, Kim made numerous trips between Korea and the United States so as to achieve the goal of OGK America and Otos of introducing and maintaining a market presence in the United States.

9. The fruits of Kim's efforts paid off in approximately 1998, when OGK America acquired the first purchase order with Central Purchasing Company ("Central"), an importer and distributor of tools and other related products, including but not limited to, welding equipment. OGK America achieved this goal by establishing contact with Central to the point of realizing a steady flow of purchase orders for auto darkening welding helmets.

10. Otos agreed to pay OGK America a 4% commission of annual gross sales of the auto darkening welding helmet to the American market. Pursuant to this agreement, OGK America was paid 4% of all gross sales of all auto darkening welding helmets manufactured by

Otos and sold in the United States in 1998 and 1999.

11. At or about this time, OGK America established a sales contract with Hobart Retail Sales ("Hobart") and Miller Electric Manufacturing ("Miller"), solely through Kim's efforts, whereby Hobart and Miller agreed to sell and distribute the Otos auto darkening welding helmets to the United States market. The sales relationship with Hobart was commenced in approximately 1999, and the sales relationship with Miller was commenced in approximately 2001.

12. OGK America was exclusively responsible for the sale of Otos products in the United States commencing in 1998.

13. In 2002, Otos and OGK America agreed that OGK America would reduce the annual commission from 4% to 3%. Pursuant to this agreement, OGK America was paid 3% of all gross sales of all auto darkening welding helmets manufactured by Otos and sold in the United States in 2002.

14. On numerous occasions, Huh told Kim that the relationship between Otos and OGK America would be long term. At one point, Kim expressed to Huh that he wanted to continue his relationship with Otos at least until reaching the age of 58 years. Huh stated that there was nothing to worry about, and assured Kim that their business arrangement would continue well into their seventies.

15. In 2000, Kim further developed the market for auto darkening welding helmets in the United States by increasing annual sales for the Otos auto darkening welding helmet to approximately $1,200,000.00. In 2001, gross sales grew to $4,258,665.00. In 2002, gross sales grew to $8,239,040.00. The total worldwide sales for Otos in 2002 were $9,279,651.00. Therefore, the United States market sales represented 88.7% of all Otos' sales worldwide.

16. In May 2002, a defect developed with the Otos auto darkening welding helmet. In an effort to continue to maintain a good relationship with Central, Hobart and Miller, Kim took representatives of these clients to China and Korea in November, 2002 so as to tour the manufacturing facilities of Otos and OGK Korea, Inc. This trip solidified the relationship with the American buyers, and was an important step in maintaining the United States market for the Otos product.

17. In December of 2002, Huh once again proposed that Kim reduce his annual commission, this time from 3% to 2½ %.

18. In response to Huh's proposal that Kim reduce his commission, Kim indicated that he would consider the reduced commission conditioned upon a written guarantee by Otos of his continued exclusive representation of Otos in the United States for period of five years from January 1, 2003 to December 31, 2007. OGK America also requested a formal written contract to reflect these terms.

19. Ultimately, in February, 2003, Huh wrote back to Kim and said that he did not want to sign the agreement forwarded by Kim, and proposed instead that Otos would sell directly to the United States market and terminate the relationship with Kim.

20. In a facsimile to Huh on February 5, 2003, Kim proposed that he would agree to immediately terminate their relationship on the condition that Kim would be paid 3% of projected sales over a period of three years. He further stated that he would be advanced these monies from the accounts receivable of Miller and Hobart received by Kim.

21. On February 6, 2003, exactly one day following the communication between Kim and Huh, Otos contacted Central, Hobart and Miller and stated in an email: "Otos and OGK America Inc. have come to a **mutual agreement** that OGK America Inc. will no longer be

representing Otos Inc. in the United States." (Emphasis added.) This email confirmed that Otos had accepted Kim's offer to resolve the "buyout" issues through a lump sum payment of three years of projected commissions at 3% of annual sales.

## FIRST COUNT

### (Breach of Contract)

1. Pursuant to the verbal contract between the parties and the parties' conduct and course of dealing, Otos was to pay Kim a commission of 3 % of gross sales for his efforts in introducing and maintaining a market for auto darkening welding helmets in the United States.

2. In consideration for the payment of a 3% commission, from 1993 to 2003, Kim expended considerable time and energy in developing the United States market for auto darkening welding helmets, which efforts resulted in Otos establishing gross sales in the amount of $8,239,000.00 in 2002. Otos had no sales in the United States market until 1998, when it established a market presence through Kim's efforts.

3. Otos, through its president and shareholder, Huh, represented to Kim that the duration of the verbal contract would continue until the parties reached their seventies. It was the intent of the parties based on the nature of the contract and the surrounding circumstances that the contract would last for at least a period of 20 years.

4. Otos has breached and refused to perform the terms of the verbal contract by failing to pay Kim commissions pursuant to the verbal contract.

5. Counterclaimants, as a direct and proximate result of the breach of the verbal contract by Otos, have and will continue to be damaged.

WHEREFORE, counterclaimants demand judgment against plaintiff for compensatory damages, punitive damages, counsel fees and costs of suit.

## SECOND COUNT

(Breach of Compromise Agreement)

1. Counterclaimants incorporate by reference each and all the allegations of the First Count of the Counterclaim as if set forth at length.

2. The parties agreed on February 5, 2003, that Kim would be paid a commission of 3 % of the annual gross sales of the Otos auto darkening welding helmet in the United States for a period of three years. This agreement was confirmed on February 6, 2003, in an email sent by Otos to its customers, Central, Hobart and Miller, in which Otos confirmed the "mutual agreement" reached between Otos and OGK America.

3. Otos has breached and refused to perform the terms of the compromise agreement by failing to pay OGK America commissions pursuant to the compromise agreement.

4. If the court determines that plaintiffs did not breach the verbal contract with the counterclaimants as asserted in the First Count of the Counterclaim, then the counterclaimants plead in the alternative that, as a direct and proximate result of the breach of the compromise agreement by Otos to pay commissions of 3% of annual sales for a period of three years, counterclaimants have and will continue to be damaged.

WHEREFORE, counterclaimants demand judgment against plaintiff for compensatory damages, punitive damages, counsel fees and costs of suit.

## THIRD COUNT

(Quantum Meruit)

1. Counterclaimants incorporate by reference each and all the allegations of the First and Second Counts of the Counterclaim as if set forth at length.

2. From 1993 until February, 2003, OGK America provided Otos and Kim with

valuable services in its efforts to introduce and maintain the United States market for the Otos auto darkening welding helmets.

3. From 1993 until February, 2003, the services provided by OGK America to Otos, were accepted, used and enjoyed by Otos.

4. From 1993 until February 2003, the services were used and enjoyed by Otos under such circumstances as reasonably notified Otos that OGK America, in performance of such services, was expected to be paid by Otos.

5. Otos has been unjustly enriched at the expense of OGK America and received benefits to which it was not entitled, and otherwise conferred benefits upon itself which are not rightfully its or to which it was not entitled.

WHEREFORE, counterclaimants demand judgment against plaintiff for compensatory damages, punitive damages, counsel fees and costs of suit.

## FOURTH COUNT

(Breach of Implied Covenant of Good Faith and Fair Dealing)

1. Counterclaimants incorporate by reference each and all the allegations of the First, Second and Third Counts of the Counterclaim as if set forth at length.

2. The verbal contract between Otos and Kim included an implied covenant of good faith and fair dealing.

3. The aforementioned actions taken by Otos, and specifically its failure to pay Kim commissions pursuant to its contractual obligations, amounts to a breach of the implied covenant of good faith and fair dealing.

4. Counterclaimants, as a direct and proximate result of the breach of the implied covenant of good faith and fair dealing on the part of Otos, have and will continued to be

damaged.

WHEREFORE, counterclaimants demand judgment against plaintiff for compensatory damages, punitive damages, counsel fees and costs of suit.

## THIRD-PARTY COMPLAINT

OGK America, Inc. and Youngil Kim, by way of third-party complaint, set forth the following:

### JURISDICTION AND VENUE

1. OGK America, Inc. is a corporation of the State of New Jersey with its principal place of business located at Suite 303, 111 Charlotte Place, Englewood Cliffs, New Jersey.

2. Youngil Kim ("Kim") is the president and a shareholder of OGK America, Inc., which has his principal place of business at Suite 303, 111 Charlotte Place, Englewood Cliffs, New Jersey.

3. Otos Optical Co., Ltd. is a Korean corporation with its principal place of business in Seoul, Korea.

4. Moon Young Huh is the president of Otos Tech Co., Ltd. and Otos Optical Co., Ltd. and a resident of Seoul, Korea.

5. This court has original jurisdiction over this third-party complaint pursuant to 28 U.S.C. Sect. 1332 (a) because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and the plaintiff and defendants are citizens of different states.

6. Venue is proper in this court pursuant to 28 U.S.C. Sect. 1391 (a) and (c).

### FIRST COUNT

(Breach of Contract)

1. Pursuant to the verbal contract between the parties and the parties' course of

dealing, Otos Tech Co., Ltd., Otos Optical Co. Ltd. and Moon Young Huh were to pay Kim a commission of 3 % of gross sales for his efforts in introducing and maintaining a market for auto darkening welding helmets in the United States.

2. In consideration for the payment of a 3% commission, from 1993 to 2003, Kim expended considerable time and energy in developing the United States market for auto darkening welding helmets, which efforts resulted in Otos establishing sales in the amount of $8,239,000.00 in 2002. Otos had no sales in the United States market until 1998, when it established a market presence through Kim's efforts.

3. Moon Young Huh, President and owner of Otos Tech Co., Ltd. and Otos Optical Co. Ltd., stated that it would continue until the parties reached their seventies. It was the intent of the parties based on the nature of the contract and the surrounding circumstances that the contract would last for at least a period of 15 years.

4. Otos Optical Co., Ltd. and Moon Young Huh have breached and refused to perform the terms of the verbal contract by failing to pay Kim commissions pursuant to the verbal contract.

5. Third-party plaintiffs, as a direct and proximate result of Otos Optical Co., Ltd. and Moon Young Huh's breach of the verbal contract, have and will continued to be damaged.

WHEREFORE, third-party plaintiffs demand judgment against Otos Optical Co., Ltd. and Moon Young Huh for compensatory damages, punitive damages, counsel fees and costs of suit.

## SECOND COUNT

(Breach of Compromise Agreement)

1. Third-party plaintiffs incorporate by reference each and all the allegations of the

First Count of the Third-Party Complaint as if set forth at length.

2. The parties agreed on February 5, 2003, that Kim would be paid a commission of 3 % of the annual sales of the Otos auto darkening welding helmet in the United States for a period of three years. This agreement was confirmed in an email sent by Moon Young Huh to Central, Hobart and Miller on February 6, 2003, in which Huh confirmed the "mutual agreement" reached between Otos and OGK America.

3. Otos Optical Co., Ltd. and Moon Young Huh have breached and refused to perform the terms of the compromise agreement resolving Kim's claim by failing to pay OGK America commissions pursuant to the contract.

4. If the court determines that the plaintiffs did not breach the verbal contract with the third-party plaintiffs as asserted in the First Count of the Third-Party Complaint, then the counterclaimants plead in the alternative that, as a direct and proximate result of the breach of the compromise agreement by Otos to pay commissions of 3% of annual sales for a perior of three years, third-party plaintiffs have and will continued to be damaged

WHEREFORE, third-party plaintiffs demand judgment against Otos Optical Co., Ltd. and Moon Young Huh for compensatory damages, punitive damages, counsel fees and costs of suit.

### THIRD COUNT

(Quantum Meruit)

1. Third-party plaintiffs incorporate by reference each and all the allegations of the First and Second Counts of the Third-Party Complaint as if set forth at length.

2. From 1993 until February, 2003, OGK America provided Otos Optical Co., Ltd. and Moon Young Huh with valuable services in its efforts to introduce and maintain the United

States market for the Otos auto darkening welding helmets.

3. From 1993 until February, 2003, the services provided by OGK America to Otos Optical Co., Ltd. and Moon Young Huh, were accepted, used and enjoyed by Otos Optical Co., Ltd. and Moon Young Huh.

4. From 1993 until February 2003, the services were used and enjoyed by Otos Optical Co., Ltd. and Moon Young Huh under such circumstances as reasonably notified Otos Optical Co., Ltd. and Moon Young Huh that OGK America, in performance of such services, was expected to be paid by Otos.

5. Otos Optical Co., Ltd. and Moon Young Huh have been unjustly enriched at the expense of OGK America and received benefits to which it was not entitled, and otherwise conferred benefits upon itself which are not rightfully its or to which it was not entitled.

WHEREFORE, third-party plaintiffs demand judgment against Otos Optical Co., Ltd. and Moon Young Huh for compensatory damages, punitive damages, counsel fees and costs of suit.

## FOURTH COUNT

(Breach of Implied Covenant of Good Faith and Fair Dealing)

1. Third-party plaintiffs incorporate by reference each and all the allegations of the First, Second and Third Counts of the Third-Party Complaint as if set forth at length.

2. The verbal contract between Otos Optical Co. Ltd., Moon Young Huh and Kim included an implied covenant of good faith and fair dealing.

3. The aforementioned actions taken by Otos Optical Co., Ltd. and Moon Young Huh, and specifically their failure to pay Kim commissions pursuant to their contractual obligations, amounts to a breach of the implied covenant of good faith and fair dealing.

4. Third-party plaintiffs, as a direct and proximate result of Otos Optical Co., Ltd. and Moon Young Huh's breach of the implied covenant of good faith and fair dealing, have and will continued to be injured.

WHEREFORE, third-party plaintiffs demand judgment against Otos Optical Co., Ltd. and Moon Young Huh for compensatory damages, punitive damages, counsel fees and costs of suit.

## FIFTH COUNT

(Tortious Interference with Economic Advantage)

1. Third-party plaintiffs incorporate by reference each and all the allegations of the First, Second, Third and Fourth Counts of the Third-Party Complaint as if set forth at length.

2. Kim and OGK America had an ongoing business relationship with OGK Korea, Inc., from which both Kim and OGK America had reasonable expectation of a continued economic advantage.

3. Huh has intentionally and with malice interfered with the economic relationship between Kim, OGK America and OGK Korea, Inc.

4. Huh's interference has caused Kim and OGK America the loss of prospective economic gain.

5. As the result of Huh's interference, Kim and OGK America have been damaged.

WHEREFORE, third-party plaintiffs demand judgment against Moon Young Huh for compensatory damages, punitive damages, counsel fees and costs of suit.

## DESIGNATION OF TRIAL COUNSEL

Kevin J. Conyngham, Esq., is hereby designated as Trial Counsel of this matter.

## JURY DEMAND

The defendants/counterclaimants and third-party plaintiffs, OGK America, Inc. & Youngil Kim, hereby demand a trial by jury on all issues so triable herein.

                                          ZIMMERER, MURRAY & CONYNGHAM
                                          Attorneys for Defendants/counterclaimants and
                                          third-party plaintiffs, OGK America, Inc. and
                                          Youngil Kim

                                          By: _____
                                               Kevin J. Conyngham

## CERTIFICATION

I hereby certify that a copy of the within Answer, Counterclaim and Third-Party Complaint was served within the time prescribed by the Federal Rules of Civil Procedure.

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding. No such action or arbitration proceeding is contemplated.

                                              ZIMMERER, MURRAY & CONYNGHAM
                                              Attorneys for Defendants/counterclaimants and third-party plaintiffs, OGK America, Inc. and Youngil Kim

                                              By: _____
                                                  Kevin J. Conyngham

Dated: July 17, 2003