# ZIMMERER, MURRAY & CONYNGHAM
### ATTORNEYS AT LAW
PARK 80 WEST, PLAZA ONE
SADDLE BROOK, NJ 07663
(201) 845-7077
FAX (201) 845-7877

ROBERT ZIMMERER
JOSEPH G. MURRAY*
KEVIN J. CONYNGHAM
ELIZABETH A. DARMODY**
JAMES FALCICCHIO
ELIZABETH A. MONAGHAN***
STACEY J. SICILIANO

SOUTH JERSEY OFFICE
75 MAIN STREET, SUITE 14
MANASQUAN, NJ 08736
(732) 528-7740
FAX (732) 528-7780

*ADMITTED NJ, NY & CT BAR
**ADMITTED NJ, PA & FL BAR
***ADMITTED NJ & NY BAR

PLEASE REPLY TO:
SADDLE BROOK

April 3, 2006

The Honorable William H. Walls
United States District Court
Martin Luther King Jr. Federal Building
50 Walnut Street, Room 2037
Newark, New Jersey 07102

    Re:    Otos Tech Co., LTS. v. OGK America, Inc., et al.
            Civil Action No: 03-1979 (WHW)

Dear Judge Walls:

    This law firm represents defendants and third party plaintiffs, OGK America, Inc., Yale Kim A/K/A Youngil Kim, in the above matter. Please be further advised that we have this day filed an opposition to the motion to enforce a foreign judgment which is returnable on Monday, April 17, 2006. It is my understanding that the reply to be submitted on behalf of the plaintiff is due on or before Monday, April 10, 2006. We are respectfully requesting oral argument on this application, although we understand that Your Honor has complete discretion as to whether to grant oral argument.

Respectfully submitted,

Kevin J. Conyngham

KJC/ye
Enclosures

cc:    Walter A. Lesnevich, Esq. (Via Hand Delivery - Messenger Service)

**KEVIN J. CONYNGHAM (0135)**
**ZIMMERER, MURRAY & CONYNGHAM**
Park 80 West, Plaza One
Saddle Brook, NJ 07663
Tel. (201) 845-7077
**Attorneys for Defendants/counterclaimants and third-party plaintiffs, OGK America, Inc. & Yale Kim a/k/a Youngil Kim**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OTOS TECH CO., LTD., | CIVIL ACTION NO: 03-1979 (WHW) |
| Plaintiff, | Hon. William H. Walls, U.S.D.J. |
| vs. | |
| OGK AMERICA, INC. A/K/A YOUNGIL KIM, | **CERTIFICATION OF SERVICE** |
| Defendants/Third-Party Plaintiffs | **(Document Filed Electronically)** |
| vs. | |
| OTOS OPTICAL CO., LTD., and MOON YOUNG HUH | |
| Third-Party Defendants. | |

I hereby certify that a copy of the Opposition on behalf of defendants/counterclaimants' and third-party plaintiffs, OGK America, Inc. & Yale Kim a/k/a Youngil Kim to the Motion to Enforce Foreign Judgment of Korea was forwarded Via Hand Delivery (Messenger Service) on April 3, 2006 to the following counsel for the plaintiff:

> Walter A. Lesnevich, Esq.
> Lesnevich & Marzano-Lesnevich
> Court Plaza South
> 21 Main Street, West Wing
> Suite 250
> Hackensack, NJ 07601

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

ZIMMERER, MURRAY & CONYNGHAM
Attorneys for defendants/counterclaimants
and third-party plaintiffs, OGK America, Inc. &
Yale Kim a/k/a Youngil Kim


By: ___/s/ Kevin J. Conyngham___
     KEVIN J. CONYNGHAM

Dated: April 3, 2006

KEVIN J. CONYNGHAM (0135)
ZIMMERER, MURRAY & CONYNGHAM
Park 80 West, Plaza One
Saddle Brook, NJ 07663
Tel. (201) 845-7077
Attorneys for defendants/counterclaimants and third-party plaintiffs,
OGK America, Inc. & Yale Kim a/k/a Youngil Kim

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OTOS TECH CO., LTD., | CIVIL ACTION NO: 03-1979 (WHW) |
| Plaintiff, | Hon. William H. Walls, U.S.D.J. |
| vs. | |
| OGK AMERICA, INC. & YALE KIM A/K/A YOUNGIL KIM, | **(Document Filed Electronically)** |
| Defendants/Third-Party Plaintiffs | |
| vs. | |
| OTOS OPTICAL CO., LTD., and MOON YOUNG HUH | |
| Third-Party Defendants. | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION TO ENFORCE FOREIGN JUDGMENT OF KOREA**

Kevin J. Conyngham, Esq.
Of Counsel and on The Brief

# TABLE OF CONTENTS

TABLE OF CITATIONS .................................................................................................................. ii

POINT I      THE JUDGMENT IN KOREA SHOULD NOT BE ENFORCED
AS IT IS NOT FINAL OR CONCLUSIVE PURSUANT TO THE
LAW OF THE STATE OF NEW JERSEY ............................................................ 1

         A.     The Judgment of Korea was rendered under a system with procedures
that violates the requirements of due process of law ................................ 2

         B.     The Judgment of Korea was obtained by fraud. ....................................... 5

         C.     The Judgment of Korea is contrary to the public policy of New Jersey. ............... 6

         D.     The Judgment of Korea was rendered contrary to an agreement
that the dispute in question would be decided by the United States
District Court ............................................................................................. 7

POINT II     THE JUDGMENT IN KOREA SHOULD NOT BE ENFORCED
AS THE FACTS AND ISSUES IN THE TWO CASES ARE
SUBSTANTIALLY DIFFERENT ......................................................................... 9

CONCLUSION ............................................................................................................................. 12

## TABLE OF CITATIONS

Berman v. Airlift International Inc., 111 N.J. Super. 461 (Chancery Division 1990) ............... 11

Berman v. Airlift International, 312 F. Supp. at 1207. .................................................................. 11

Choi v. Kim, 50 F.3d 244 (3rd Cir. 1995) ..................................................................................... 2, 4

Dao v. Knightsbridge Intern. Reinsurance Corp., 15 F.Supp.2d 567 (1998) ............................... 7

Gantes v. Kason Corp., 278 N.J.Super.473, 479 (Law Div. 1993) ............................................... 6

Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 35 (3d Cir. 1975) ............................................ 6

Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1895) ........................ 1

Kam-Tech Systems Ltd. v. Yardeni, 340 N.J.Super. 414 (App. Div. 2001) ............................... 1, 2

Knighton v. Int'l Business Machines Corp.,
856 S.W.2d 206, 209 (Tex. App. - Houston [1 Dist.] 1993) ........................................................ 2

McMurrie v. Town of Kearny, 174 N.J. 523, 533-534 (2002). .................................................... 6

Yahoo! Inc., a Delaware Corp. v. La Ligue Contre Le Racisme
Et L'Antisemitisme, a French Association, et. al., 433 F.3d 1199 (2006) ................................. 1, 6

## STATUTES

N.J.S.A. 2A:49A-20 ......................................................................................................................... 1

N.J.S.A. 2A:49A-20(a)(1) ............................................................................................................... 5

N.J.S.A. 2A:49A-20(b) .................................................................................................................... 2

N.J.S.A. 2A:49A-20(b)(2) ............................................................................................................... 5

N.J.S.A. 2A:49A-20(b)(3) ............................................................................................................... 7

N.J.S.A. 2A:49A-20(b)(5) ............................................................................................................... 8

## POINT I

### THE JUDGMENT IN KOREA SHOULD NOT BE ENFORCED AS IT IS NOT FINAL OR CONCLUSIVE PURSUANT TO THE LAW OF THE STATE OF NEW JERSEY

Before a foreign judgment is sought to be enforced, it must first be recognized as a valid judgment. Yahoo! Inc., a Delaware Corp. v. La Ligue Contre Le Racisme Et L'Antisemitisme, a French Association, et. al., 433 F.3d 1199 (2006). The Yahoo court held that "In a typical enforcement case, the party in whose favor the foreign judgment was granted comes to an American court affirmatively seeking enforcement. The standard rule in such a case is that the federal court sitting in diversity applies the law of the state in which it sits." Yahoo at 1213.

The question of whether the judgment rendered in a foreign country should be enforced in New Jersey was recently addressed in Kam-Tech Systems Ltd. v. Yardeni, 340 N.J.Super. 414 (App. Div. 2001), where the Appellate Division of the State of New Jersey commented that the United States Constitution made no specific provision for recognizing or enforcing judgments entered by the courts of other nations. As a result, the subject was deemed a matter of "comity," as explained in the leading case of Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1895). "Comity is the recognition which one state allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Hilton, supra, 159 U.S. at 163-64; Kam-Tech at 420.

New Jersey courts will recognize a final foreign country judgment for money damages as "conclusive between the parties," unless the judgment debtor establishes one of the specific grounds for non-recognition that are enumerated in N.J.S.A. 2A:49A-20. Kam-Tech at 422. This statute states that a foreign country money-judgment is not conclusive if the judgment was rendered under a system which

-1-

is not compatible with the requirements of due process of law, if the foreign country did not have personal jurisdiction over the judgment debtor or if the foreign country did not have subject matter jurisdiction. Kam-Tech at 422. The statute further states that the foreign country money-judgment need not be recognized if the judgment debtor did not receive notice of the proceedings, the judgment was obtained by fraud, the cause of action was contrary to public policy, the judgment conflicts with a prior final judgment, the proceedings were contrary to a settlement agreement, or the foreign country court was a seriously inconvenient forum. N.J.S.A. 2A:49A-20(b).

A. **The Judgment of Korea was rendered under a system with procedures that violates the requirements of due process of law.**

In Choi v. Kim, 50 F.3d 244 (3rd Cir. 1995), the one of two cases relied on by plaintiff in bringing this motion, resulted in the court finding that the process resulting in the entry of the order of execution violated due process. In a concurring opinion, Judge Lewis noted that a plaintiff has a prima facie burden when he or she asserts that he or she is entitled to enforcement in one state of a court judgment of another. Id. at 250. "Courts in a variety of jurisdictions have recognized this basic burden: a proffered judgment must at least appear to be a valid judgment before an enforcing court will accord it a presumption of enforceability." Knighton v. Int'l Business Machines Corp., 856 S.W.2d 206, 209 (Tex. App. - Houston [1 Dist.] 1993).

The judgment from Korea in this matter, likewise violates due process. The procedural history of this case and the case in Korea serves as an important backdrop on this issue. The plaintiff brought two actions: The first here in the United States when it filed a complaint in May of 2003, and a second lawsuit brought in Korea in late 2004, alleging a similar cause of action against only one of the defendants in this matter, namely, Youngil Kim. OGK America was not designated as a defendant in Korea. The matter in Korea proceeded summarily before a judge only and not before a jury.

In June of 2005, the Honorable William H. Walls, U.S.D.J., denied the cross-motions for summary judgment filed by the parties in this matter finding that there were numerous issues of fact in dispute that must be decided by a jury. Both attorneys for the parties wrote to Judge Walls while the motions for summary judgment were being considered, addressing the court as follows:

> There are ongoing legal proceedings in the Republic of Korea that will be impacted by the resolution of this matter in the United States District Court. Both Counsel have been asked to report to their Korean clients and through their attorneys to the Korean Court, the status of the Summary Judgment Motion. See Exhibit F of Certification of Kevin J. Conyngham.

The attorneys agreed that "the resolution of this matter in the United States District Court" will impact, not may impact, the second lawsuit pursued in Korea by the plaintiff against Youngil Kim. The outcome of the motion for summary judgment resulted in a decision that the matter should proceed to trial, before a jury, in United States District Court. Based on the foregoing, it is clear that the matter in Korea was pursued almost tow years after the complaint was filed in this matter and during the pendency of the cross motions for summary judgment filed in this matter.

Youngil Kim was served in Korea with what is called a Provisional Attachment in January of 2005 which enjoined Mr. Kim's client, OGK Korea Co., Ltd., from paying commissions to Mr. Kim before there was an adjudication on the merits. See Exhibit A of Certification of Youngil Kim, copy of Provisional attachment with Kim's translation. The ruling of a Provisional Attachment essentially placed a lien against the payment of future commissions by OGK Korea Co., Ltd. (one of Mr. Kim's clients) to Mr. Kim of OGK America. The amount of the lien was $587,755.05, the exact amount being sought in the present litigation. The services of the Provisional Attachment in January of 2005 was the first notice by Youngil Kim

that Otos was pursuing a separate and distinct cause of action in Korea. Admittedly, the proceeding is similar, but not identical, to the lawsuit in this matter. By interfering with Mr. Kim's ability to earn commissions from OGK Korea Co., Ltd., Otos deprived Mr. Kim of essentially all sources of income.

The concurring opinion of Judge Lewis in <u>Choi</u> provides significant insight into the due process concerns. Importantly, Judge Lewis notes the following at Page 252 in commenting on the South Korean legal system:

> [T]he District Court then addressed whether the South Korean legal system had afforded Kim American-style due process. The District Court's analysis of the "process" provided by South Korean law is brief enough that I quoted in full:
>
>> While Kim may have waived his right to notice and a hearing prior to the execution on the deed, the Court is unable to ascertain whether Korea provides Kim any opportunity to vacate or challenge this "judgment" once Choi acts upon the execution order. As the Court understands Song's argument, Choi could seize any of Kim's attachable assets in Korea without ever having a Korean court of law enter a judgment on the deed and the execution order. Whether or not this is a correct interpretation of Korean law, and irrespective of the notice, hearing and opportunity to vacate questions, this kind of judgment without judicial oversight is an anathema to our concept of due process. <u>Id.</u>

The foregoing is crucial in that it is consistent with the present case to the extent that Youngil Kim did not have the right to preserve his property in Korea which is presently subject

of attachment and as order of excursion, , while the proceeding in Korea is ongoing and the subject of an appeal. As indicated in the certification of Mr. Kim, he did not have advance notice of the Korean lawsuit and Provisional Attachment which is violative of due process. For these reasons, the judgment in Korea should not be enforced in the present matter. N.J.S.A. 2A:49A-20(a)(1).

B.  **The Judgment of Korea was obtained by fraud.**

The limited portions of the proceeding in Korea as attached to the moving papers of the plaintiff reveal numerous inconsistencies, misstatements and misrepresentations on the part of plaintiff, that rise to the level of fraud. First and foremost, the plaintiff argued in Korea, in opposition to Kim's motion to dismiss the Korean lawsuit due to the active proceeding in the United States, that the Korean Court should not wait until the United States District Court action is adjudicated because the trial in the United States would not be reached until June of 2007. See Exhibit B of Certification of Walter Lesnevich, copy of the Legal Brief of Korean Attorney for Kim at page one. The plaintiff argued in Korea, since the original action the United States was filed in May of 2003 and the decision of Judge Walls on the cross motions for summary judgment was not rendered until in June of 2005, (i.e., two years and one month later), that likewise, the case would take another two years to be reached for trial in the United States (i.e., June of 2007). The plaintiff also argued in Korea that the Untied States lawsuit is different than the Korean lawsuit in order to convince the Korean Court not to wait until the United States lawsuit was adjudicated. On the present motion, plaintiff now takes a diametrically opposite position by claiming that the matters in both countries are identical. The foregoing represents that the judgment reached in Korea was based upon the fraudulent statements to the court in

Korea in order to convince the court not to wait until the United States matter was adjudicated or to otherwise dismiss the Korean lawsuit due to the similar nature of both proceedings. N.J.S.A. 2A:49A-20(b)(2). Obviously, the plaintiff should also be estopped from now arguing that the two lawsuits one identical (which is diametrically opposed to the position it took in Korea) base upon judicial estoppel. See McMurrie v. Town of Kearny, 174 N.J. 523, 533-534 (2002).

C.  **The Judgment of Korea is contrary to the public policy of New Jersey.**

Pursuant to the Restatement (Third) of the Foreign Relations Law of the United States, the general principle of enforceability of a foreign judgment is that an American court will not enforce a judgment if "the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought. Yahoo at 1215.

New Jersey courts have always frowned upon forum shopping, which, if allowed, would increase litigation and needlessly burden the courts of this State. Gantes v. Kason Corp., 278 N.J.Super.473, 479 (Law Div. 1993) (quoting Deemer, supra, 193 N.J. Super. at 650-653). In essence, the policy against forum shopping is intended to ensure that New Jersey courts are not burdened with cases that have only "slender ties" to New Jersey. See Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 35 (3d Cir. 1975). In this case, plaintiff and defendant entered into a verbal contract in New Jersey and Kim performed, as exclusive agent, in the United States for the plaintiff by operating his business out of New Jersey. The payments received by Kim from his clients were sent to his office in New Jersey. The plaintiff initially sought to avail itself of the federal court system (and continues to do so) to litigate this dispute. There is not doubt that the litigants and issues in this matter have significant links to New Jersey. This action is materially connected to New Jersey. Therefore, this matter should now be adjudicated as to all

issues, and not only those issues that plaintiff has hand picked to be determined in the United States. To allow the plaintiff to abuse the court system in such a way will create a negative precedent and a model for future litigation involving international litigants in disputes with ties to New Jersey; thus, creating a system that enables forum shopping resulting in increased litigation in the courts of this state.

In addition, the plaintiff's attempt to enforce the judgment of Korea in this matter would, in effect, deprive the defendants with their constitutional right to a jury trial on all issues. The Honorable William H. Walls, U.S.D.J., also held, in deciding the cross motions for summary judgment in this matter, that the causes of action pursued by the parties could not be determined by a Judge as a matter of law, but by a jury as the fact finder at trial. By allowing the judge in Korea to determine the limited issue of whether defendants properly retained the $587,755.05 pursuant to a "mutual agreement" entered into by the parties (also known as the "February 5, 2003 agreement"), would violate the defendants Constitutional right to a jury trial in the federal court system pursuant to the Seventh Amendment. Dao v. Knightsbridge Intern. Reinsurance Corp., 15 F.Supp.2d 567 (1998). For the foregoing reasons, it is clear that the judgment from Korea should not be recognized as it repugnant and otherwise contrary to the public policy of the State of New Jersey. N.J.S.A. 2A:49A-20(b)(3).

**D.     The Judgment of Korea was rendered contrary to an agreement that the dispute in question would be decided by the United States District Court.**

In June of 2005, the Honorable William H. Walls, U.S.D.J., denied the cross-motions for summary judgment filed by the parties in this matter finding that there were numerous issues of fact in dispute that must be decided by a jury. Both attorneys for the parties wrote to Judge Walls on May 4, 2005, while the motions for summary judgment were being considered,

addressing the court as follows:

> There are ongoing legal proceedings in the Republic of Korea that will be impacted by the resolution of this matter in the United States District Court. Both Counsel have been asked to report to their Korean clients and through their attorneys to the Korean Court, the status of the Summary Judgment Motion.

The attorneys agreed that "the resolution of this matter in the United States District Court" will impact, the second lawsuit pursued in Korea by the plaintiff against Youngil Kim. Based on the foregoing, it is clear that the parties agreed that the outcome or resolution of this matter would be controlling. Ultimately, Judge Walls denied the cross motions for summary judgment deciding that the matter should proceed to trial, before a jury, in United States District Court. The plaintiff initiated the lawsuit in the United States District Court and should now be bound by its agreement that the issues would be by way of "resolution of this matter in the United States District Court." N.J.S.A. 2A:49A-20(b)(5).

## POINT II

### THE JUDGMENT IN KOREA SHOULD NOT BE ENFORCED AS THE FACTS AND ISSUES IN THE TWO CASES ARE SUBSTANTIALLY DIFFERENT

The litigation in this matter involves a number of issues. Specifically, whether there was an oral contract between the parties (which includes issues of duration of the agreement, and whether the agreement was mutually or unilaterally terminated). This was not an issue to be adjudicated in Korea. There is also the issue of whether the Otos Tech and Moon Young Huh breached the implied covenant of good faith and fair dealing. Specifically, the conduct of Otos Tech during the course of the contract and when Otos Tech and Huh breached the covenant by leading my clients to believe that there would be a long-term relationship (and thus benefitting from great increases in United States sales) by lowering the commission rate and ultimately ending the relationship once sales were well established in the United States. This was not an issue before the Court in Korea. In fact, the sole issue in Korea involved whether the parties agreed that my client could keep the sum of $587,755.05 generated from United State sales pursuant to a "mutual agreement".

A detailed review of the decision of the judge in Korea at Page 14 (see Exhibit G of certification of Walter A. Lesnevich annexed to the underlying motion papers) reveals that the decision only addresses the limited issue of whether defendant Kim and plaintiff had entered into an agreement that would allow the defendant to pay himself three years of anticipated profits out of accounts receivable that he was holding from U.S. sales. The judge in his decision in Korea lists the causes of action on Page 8 of the decision, where he characterizes the causes of action in this matter as follows:

1. Embezzlement;

2. Payment demand for product sales;

3. Breach of contract, and

4. Improper conversion.

The Korean court goes on to characterize the counterclaims of Mr. Kim as well as OGK America (which was not named as a defendant in Korea) as follows:

1. Breach of contract;

2. Breach of agreement dated February 5, 2003;

3. A compensation demand for the provided labor; and

4. A violation of the principal mutual trust.

After reviewing the decision in Korea, it is clear that the sole determination made in Korea addressed the February 5, 2003 agreement or the "mutual agreement". Accordingly, the Court did not address issues of an oral agreement that was entered into between plaintiff and the defendant whereby the plaintiff through its principal, Mr. Huh, indicated that Mr. Kim and Mr. Huh would be working together for many years. In addition, there was no decision on the claim of quantum meruit or breach of the implied covenant of good faith and fair dealing. These are causes of action that were pending and are presenting pending notwithstanding the outcome of the judgment in Korea.

It is anticipated that the plaintiff will argue that the judgment of Korea is res judicata as to all matters in issue as determined by the judgment in Korea. It is also anticipated that the plaintiff will argue that the judgment is binding as to issues which were implied or otherwise inferred from the judgment in that the judgment could not have been rendered without finding or determination of such matters. However, the plaintiff cannot rely upon the doctrine of res

judicata because the aforementioned causes of action pursued by the defendants in the United States were in existence prior to the commencement of the action in Korea.  The law in New Jersey regarding compulsory claims was addressed in Berman v. Airlift International Inc., 111 N.J. Super. 461 (Chan. Div. 1990) wherein the court stated that a:

> Compulsory counterclaim is not, in fact, compulsory if..." at the time the action was commenced, the claim was the subject of another pending action." Berman v. Airlift International , 312 F. Supp. at 1207.

The Berman court would support the finding that that the plea of res judicata should be denied in that at the time the Korean action was commenced, the claim for damages on the part of the defendants (by way of counterclaims and third party complaint) was already the subject of the present action.  Accordingly, the defendants should be able to pursue the counterclaims and third party complaint as said claims were pending prior to the proceeding in Korea.  Obviously, OGK America, was not named in Korea and accordingly, it should be entitled to pursue these claims as well.

It is clear that plaintiff pursued the litigation in Korea (which was filed almost two years after the commencement of the present matter) as a back up plan in case the plaintiff does not prevail in the United States litigation.  Plaintiff sought an alternative to the United States litigation by pursuing the litigation in Korea where a local court might look more favorably upon a Korean Company.  I find it ironic that the plaintiff, a large Korean Company (that has spent countless sums of money to pursue the defendants on two continents) is moving before this court at this time on a motion to enforce a foreign judgment   claiming that these lawsuits involve the identical issues (which was not the position it took in Korea).  There is no mention of seeking a dismissal based upon res judicata or for transfer of venue to Korea based on forum non

-11-

conveniens. The plaintiff is seeking an unfair advantage by pursuing piecemeal claims by way of piecemeal litigation in two countries. This egregious action has already significantly impacted the rights of the defendants. Justice must prevail so as to allow the defendants their day in this court before a jury. The plaintiff pursued this lawsuit first, and the defendants have viable counterclaims that must be heard regardless of the outcome of the litigation in Korea.

## CONCLUSION

For the foregoing reasons, defendants/counterclaimants and third-party plaintiffs, OGK America, Inc. & Yale Kim a/k/a Youngil Kim, respectfully request that the court deny plaintiff's Motion to Enforce the Judgment of Korea.

Respectfully submitted,

ZIMMERER, MURRAY & CONYNGHAM
Attorneys for defendants/counterclaimants
and third-party plaintiffs, OGK America, Inc. &
Yale Kim a/k/a Youngil Kim


By: ___/s/ Kevin J. Conyngham___
      KEVIN J. CONYNGHAM

Dated: April 3, 2006

-12-