UNITED STATES DISTRICT COURT

District of New Jersey

| | |
|---|---|
| Chambers of<br>William H. Walls<br>District Judge<br>_____<br><br>(973) 645-2564<br>(973) 645-3436 Fax | Martin Luther King Jr.<br>Federal Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102 |

NOT FOR PUBLICATION

LETTER OPINION

ORIGINAL ON FILE WITH CLERK OF COURT

August 13, 2007

Appearances:

*Attorneys for Plaintiff*
Walter Andrew Lesnevich
Michael R. Mildner
Lesnevich & Marzano-Lesnevich, Esqs.
Court Plaza South
21 Main Street, West Wing, Suite 250
Hackensack, NJ 07601

*Attorneys for Defendants*
Kevin J. Conyngham
Robert Zimmerer
Zimmerer, Murray & Conyngham, Esqs.
Park 80 West, Plaza One
Saddlebrook, NJ 07663

Re:   Otos Tech Co., Ltd. v. OGK America, Inc., No. 03-1979 (WHW), Motion for New Trial

Dear Litigants:

Plaintiff Otos Tech Co., Ltd. ("Otos Tech") moves for a new trial under Fed. R. Civ. P. 59. Pursuant to Fed. R. Civ. P. 78, the Court decides this motion without oral argument. The motion is denied.

**NOT FOR PUBLICATION**

**FACTS AND PROCEDURAL HISTORY**

The plaintiff, Otos Tech, is a South Korean corporation based in Seoul. It manufactures industrial equipment, including welding equipment such as auto-darkening welding helmets. Defendant, OGK America, Inc. ("OGK"), is a New York corporation, with its principal place of business in Englewood Cliffs, New Jersey. Defendant Yale Kim ("Kim") is the president of OGK. Third-party defendant Otos Optical Co., Ltd. ("Otos Optical"), is a South Korean Corporation with its principal place of business in Seoul. Third-party defendant Moon Young Huh ("Huh") is the president of Otos Tech and Otos Optical.

In November 1998, Otos Tech and OGK entered into a verbal contract under which OGK was to act as Otos Tech's exclusive agent for welding helmets in the United States. In return, OGK was to receive a commission calculated as a percentage of Otos Tech's sales in the U.S. In 1998 that commission amounted to 5% of sales. In 2002 it was reduced to 4%, and in 2002 to 3%. With OGK's assistance, Otos Tech entered the U.S. market with some success. From 2000 to 2002 Otos Tech's U.S. sales increased from $1.2 million to over $8 million.

The dispute between Otos Tech and OGK stems in large part from their transactions with Miller-Hobart, one of Otos Tech's American customers. When Miller-Hobart purchased welding helmets from Otos Tech, it would place the order with OGK, which submitted it to Otos Tech in Korea. Otos Tech then sent the helmets to Miller-Hobart along with an invoice, and Miller-Hobart paid the invoiced amount to OGK. OGK then relayed the payment to Otos Tech, and Otos Tech paid OGK its commission on the transaction. In late 2002 and early 2003, Otos Tech sold $587,755.05 of its products to Miller-Hobart.

**NOT FOR PUBLICATION**

During this period Otos Tech grew dissatisfied with the agency agreement. In January 2003, after traveling to South Korea to meet with Huh, Kim sought to enter into a written commission agreement that would give OGK commissions of 2.5% on sales. In a February 5, 2003 e-mail, Huh's employee informed Kim that Huh did not wish to sign the agreement and Otos Tech would deal with Miller-Hobart directly. That same day, Kim sent a facsimile to Huh claiming that OGK was entitled to 5 years of "anticipated profit" because Huh had terminated the oral contract. Stating that he was satisfied with only 3 years of anticipated profits, Kim offered to take that amount out of accounts receivable if Huh did not object. On February 6, 2003, Otos Tech notified OGK and Miller-Hobart that Kim and OGK's agency relationship with Otos Tech was terminated.

Soon thereafter, Otos Tech discovered that Miller-Hobart had paid $587,755.05 to OGK in December 2002 and January 2003. OGK never remitted this money to Otos Tech. In May 2003, Otos Tech filed a complaint in the District of New Jersey, alleging numerous causes of action against OGK and Kim, including breach of contract and conversion. In January 2004, Otos Tech filed an amended complaint, which made substantially identical allegations as the original complaint and also alleged that OGK had converted $36,615.75 more from Otos Tech by retaining the commission OGK was paid on a shipment of defective welding helmets to Miller-Hobart in 2002. Miller-Hobart returned this shipment to Otos Tech for a refund, but OGK allegedly did not return the commission to Otos Tech.

OGK filed counterclaims and a third-party complaint against Otos Tech, Huh, and Otos Optical, alleging breach of contract, quantum meruit, and breach of the implied covenant of good

3

**NOT FOR PUBLICATION**

faith and fair dealing.

In July 2006, the case went to trial. Considerable testimony at trial was devoted to the issue of whether Kim's February 5, 2003 fax was sufficiently definite to comprise a settlement offer. At Otos Tech's motion, the Court determined that the fax was not sufficiently definite and dismissed as a matter of law OGK's affirmative defense based on the purported settlement agreement. Consequently, the Court instructed the jury to disregard the testimony and other evidence regarding the alleged settlement because it was irrelevant.

At trial, the parties also disputed the duration of the agency agreement. Otos Tech argued that it was terminable at will, and OGK argued that it had a fifteen year duration. During the jury charge conference the Court determined the jury could only find that Otos Tech breached the agency agreement if the agreement's duration was fifteen years.[1] Accordingly, the jury interrogatories required the jury to make a specific finding as to the contract's length before finding that Otos Tech had breached it.

The jury delivered its verdict on August 2, 2006. It found that: (1) OGK and Kim had breached the agency agreement, but declined to award Otos Tech any damages for the breach; (2) OGK and Kim had wrongfully converted $587,755.05 of Otos Tech's money by failing to forward Miller-Hobart's payment to Otos-Tech; (3) OGK and Kim did not wrongfully convert $36,615.75 by retaining the commission on the defective helmets; (4) Otos Tech had breached the implied covenant of good faith and fair dealing and awarded $910,000.00 to OGK and Kim

---

[1] In so deciding, the Court rejected OGK's alternative argument that the jury could find that the contract was intended to have a "reasonable duration."

**NOT FOR PUBLICATION**

to compensate them for breach of the implied covenant. Since the jury did not find that Otos Tech had breached the agency agreement, it made no finding as to the intended length of the contract.

Otos Tech filed a motion for a new trial as to the award for the breach of the implied covenant of good faith and fair dealing. It argues that a new trial should be granted because (1) the jury's verdict as to the express contract was inconsistent with its verdict as to the implied covenant, (2) the $910,000.000 award for the breach of the implied covenant was against the weight of the evidence, (3) the jury interrogatories were deficient, (4) the Court's instruction to disregard the settlement agreement was insufficient to overcome the testimony as to that agreement at trial, (5) the doctrine of unclean hands precluded the jury from finding that Otos Tech violated the implied covenant, (6) the jury charge as to the implied covenant was improper, and (7) the defense showed and discussed in summation a chart based on excluded evidence. Otos Tech argues that the jury's award of $587,755.05 in its favor was proper and should not be re-tried.

## LEGAL STANDARD

When there has been a jury trial, a "new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. P. 59(a). Rule 59 itself does not enumerate the grounds on which a new trial may be granted, and the Court must look to courts' interpretation of the rule for guidance. Most commonly, courts have granted new trials when the jury's verdict was against the clear weight of the evidence, when the

**NOT FOR PUBLICATION**

jury verdict was facially inconsistent, when substantial errors were made in the giving or refusal of instructions, and when substantial errors were made in the admission of evidence. See Zarow-Smith v. N.J. Transit Rail Operations, Inc., 953 F. Supp. 581, 584-85 (D.N.J. 1997); Lightning Lube, Inc. v. Witco Corp., 802 F. Supp. 1180, 1186 (D.N.J. 1992), aff'd, 4 F.3d 1153 (3d Cir. 1993). The degree of latitude a trial court has to grant a new trial depends on the ground the movant asserts.

### I. Inconsistent Verdicts and Verdicts Against the Weight of the Evidence

When a court determines whether to grant a new trial because a verdict was against the clear weight of the evidence, it must exercise "restraint to avoid usurping the jury's primary function" as factfinder. Hurley v. Atlantic City Police Dep't, 933 F. Supp. 396, 403 (D.N.J. 1996). A trial court should grant a new trial on this ground only if a "miscarriage of justice would result if the verdict were to stand." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992). This is because, when a trial court grants a new trial on this ground, the "judge . . . substitutes his own judgment of the facts and credibility of the witnesses for that of the jury . . . ." Id. at 403. A court should not grant a new trial "simply because the court might have come to a different conclusion" from the jury. Lightning Lube, 802 F. Supp. at 1186. Instead, a "court must defer to the jury whenever its findings are reasonably supported by the record, and must draw all reasonable inferences in favor of the verdict winner." Hulmes v. Honda Motor Co., Ltd., 960 F. Supp. 844, 850 (D.N.J. 1997).

While an inconsistent verdict can be a ground for ordering a new trial, Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir. 1984), the district court "is

**NOT FOR PUBLICATION**

'under a constitutional mandate to search for a view of the case that makes the jury's answers consistent.'"  McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir. 1990) (quoting United States v. 0.78 Acres of Land, More or Less, 81 F.R.D. 618, 621 (E.D. Pa. 1979), aff'd without opinion, 609 F.2d 504 (3d Cir. 1979)).  As long as some legal and evidentiary basis exists for the jury's verdict, the district court should uphold it.  GNB Battery Technologies, Inc. v. Exide Corp., 876 F. Supp. 605, 610 (D. Del. 1995).  If at all possible, the court should reconcile and harmonize the jury's verdict, regardless of whether the jury likely reasoned in that way.  Gallick v. Balt. & Ohio R.R. Co., 372 U.S. 108, 119 (1963); Mycogen Plant Science, Inc. v. Monsanto Co., 61 F. Supp. 2d 199, 266 (D. Del. 1999); Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1563 (Fed. Cir. 1988).

## II. Erroneous Jury Instructions and Admission of Evidence

Conversely, when the motion for a new trial involves a matter within the trial court's sound discretion, such as evidentiary rulings, charges to the jury, or prejudicial statements made by counsel, the district court has broad latitude in ruling on the motion.  Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993); Russ-Tobias v. Pa. Bd. of Prob. & Parole, No. 04-0270, 2006 WL 516771, at *16 (E.D. Pa. Mar. 2, 2006).

To assert that a jury instruction was erroneous, the party must have objected to the jury charge or requested a different charge.  See Fed. R. Civ. P. 51(d) ("A party may assign as error . . . an error in an instruction actually given if that party made a proper objection . . . or . . . a failure to give an instruction if that party made a proper request"); Altemus v. Pa. R.R. Co., 32 F.R.D. 7, 8 (D. Del. 1963) (failure to comply with Rule 51 objection requirement precludes motion for

**NOT FOR PUBLICATION**

new trial on that ground); see also Jackson v. Baldwin-Lima-Hamilton Corp., 252 F. Supp. 529, 532 (E.D. Pa. 1966); Fan Fare, Inc. v. Fourdel Indus., Ltd., 563 F. Supp. 754, 758 (D. Ala. 1983). When determining whether to grant a new trial for failure to give a properly requested jury instruction, the court must determine "whether the charge, taken as a whole, properly apprised the jury of the issues and the applicable law." Smith v. Borough of Wilkinsburg, 147 F.3d 272, 275 (3d Cir. 1998) (quotation omitted). See Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 245 (3d Cir. 2006); Link v. Mercedes-Benz, 788 F.2d 918, 922 (3d Cir. 1986). Harmless errors in a jury charge that do not prejudice the complaining party are insufficient grounds for ordering a new trial. Watson v. S.E. Pa. Transp. Auth., 207 F.3d 207, 221-22 (3d Cir. 2000). The only limitation on a trial court's discretion to formulate jury interrogatories "is that the questions asked of the jury be adequate to determine the factual issues essential to the judgment." Armstrong v. Dwyer, 155 F.3d 211, 216 (3d Cir. 1998) (citations omitted); Burdette Tomlin Memorial Hosp., 438 F.3d at 246.

Likewise, "[w]here a contention for a new trial is based on the admissibility of evidence, the trial court has great discretion . . . [,] which will not be disturbed on appeal absent a finding of abuse." Link, 788 F.2d at 921. See Hulmes, 960 F. Supp. at 853.

## DISCUSSION

### I. Inconsistency of the Verdict

Otos Tech maintains that the verdict was inconsistent because the jury simultaneously found that OGK and Kim breached the agency agreement and that Otos Tech breached the implied covenant of good faith and fair dealing.

8

**NOT FOR PUBLICATION**

In general, nothing bars a jury from finding that one party breached a contract and the other breached the implied covenant. New Jersey law is clear that a party does not have to breach a contract's express terms to breach its implied duty to perform in good faith its duties under the contract. See Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 424 (1997); Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 130 (1976).

However, a party cannot breach the implied covenant of good faith and fair dealing unless there is an express contract. Noye v. Hoffman La Roche, Inc., 238 N.J. Super 430, 434 (App. Div. 1990). Otos Tech interprets this to mean that Otos Tech could only have breached the implied covenant before OGK breached the express contract.

Otos Tech argues that the verdict was inconsistent because the jury could not have found that Otos Tech breached the implied covenant before OGK breached the express contract. Otos Tech posits that OGK breached the express contract when Kim converted Otos Tech's $587,755.05. Otos Tech claims that the only evidence presented that it acted in bad faith before OGK's breach were (1) the several reductions in OGK's commission rate under the agency agreement and (2) Otos Tech's February 5, 2003 e-mail to Kim suspending the agency relationship.

The Court disagrees with Otos Tech's characterization of the evidence at trial. Other evidence could have supported the jury in finding that Otos Tech's performance under the contract was in bad faith before OGK breached. As example, the jury could have found that Otos Tech and Huh (1) failed to pay OGK on prior projects; (2) tried to free Otos Tech of the agency agreement with OGK in 1998; (3) misrepresented to Kim that the agency relationship between

9

**NOT FOR PUBLICATION**

the companies would be long-term; (4) required onerous and unprecedented reports from Kim; (5) told Kim not to deal with its U.S. clients; and (6) hired a salaried replacement for Kim.

The Court finds that a reasonable jury could have determined that Otos Tech breached the implied covenant before the contract was terminated. The jury's finding that OGK breached the express contract was not factually or legally inconsistent with its finding that Otos Tech breached the implied covenant.

## II. $910,000.00 Breach of the Implied Covenant Award

Otos Tech maintains that the jury must have relied on evidence relating to the alleged settlement offer when it awarded Kim and OGK $910,000.00. Since the Court instructed the jury that it was to disregard evidence relating to the settlement offer, Otos Tech argues that the award was against the clear weight of the evidence admitted at trial.

In the alleged settlement offer, Kim requested three year's of OGK's "projected profit" under the agency agreement. Otos Tech also points out that evidence presented at trial showed that Otos Tech had projected revenues of $37 million for 2003 to 2005. If Kim expected a 2.5% commission on those revenues, three years' commission would have amounted to $925,000.00. From this Otos Tech surmises that the jury must have chosen to award Kim three years of OGK's projected profits, as was proposed in the inadmissible settlement offer.

OGK responds by pointing out that it is not obvious that the jury's award was based on the alleged settlement offer. For one, it notes that the jury could have relied on Otos Tech's actual sales figures, not its anticipated sales, when it calculated the damages. Evidence at trial showed that Otos Tech's actual sales from 2003 to 2005 amounted to $29,480,180.00. If the jury

**NOT FOR PUBLICATION**

decided that OGK was entitled to 3% of actual sales in 2003 to 2005 as compensation, it would have arrived at the amount of $884,370.00. This is also roughly similar to the actual award.

The Court will not speculate whether the jury used actual or projected revenues figures to arrive at its measure of compensation. Moreover, by instructing the jury to disregard evidence relating to the alleged settlement offer, the Court did not preclude the jury from deciding that OGK was entitled to three years, or any other measure, of commission based on actual or anticipated revenues as a remedy for breach of the implied covenant.

The amount of the award was appropriate because juries have considerable discretion to determine the appropriate measure of damages for breach of the implied covenant. Under New Jersey Law, lost profits are an appropriate measure of compensation for breach of the implied covenant. Sons of Thunder, 148 N.J. 396, 425 (1997). The jury here was well within its discretion to determine that Kim only deserved three years of lost profits, even if it found that the contract still had ten or more years to run. See Sons of Thunder, 148 N.J. at 425 (adopting dissenting view of Judge Humphreys in Sons of Thunder, Inc. v. Borden, Inc., 666 A.2d 549, 588 (N.J.Super. A.D. 1995)), that one year of anticipated profits was appropriate even though the contract had three or more years to run). Accordingly, the Court finds that the jury's findings are more than "reasonably supported by the record." Hulmes, 960 F.Supp. at 850. The Court will not usurp the role of the jury by substituting its own judgment as to OGK's appropriate compensation. Fineman, 980 F.2d at 211.

### III. Jury Interrogatories

Otos Tech argues that the jury instructions were inadequate because they did not require

11

**NOT FOR PUBLICATION**

the jury to determine the term of the agency agreement if it determined, as it did, that Otos Tech did not breach that agreement. According to Otos Tech, if the jury did not expressly find that the contract had a fifteen year length, and was not terminable at will, it could not properly find that Otos Tech breached the implied covenant. Furthermore, Otos Tech argues, by not requiring the jury to expressly determine the term of the contract, the instruction "contributed to the jury's incorrect calculation of damages for Otos Tech's breach of the implied covenant of good faith." (Otos Tech Br. at 26.)

Neither of Otos Tech's arguments holds water. First, the jury could have found that Otos Tech breached the implied covenant even if the contract was terminable at will. The jury did not have to find that the agreement had a particular duration to determine that Otos Tech breached the covenant of good faith and fair dealing. See Sons of Thunder, 148 N.J. at 424; Bak-A-Lum, 69 N.J. at 130.

Second, as this Court has explained above, the jury's compensation for the breach of the implied covenant was not legally or factually incorrect. The jury instruction did not "contribute[] to the jury's incorrect calculation of damages" and so cannot form the basis for a new trial. Watson, 207 F.3d at 221-22 (harmless errors in charge insufficient grounds for ordering new trial).

Moreover, Otos Tech's counsel agreed without objection to the formulation of the jury interrogatories. As mentioned, to assert that an instruction was erroneous, a party must have objected to the charge or requested a different charge. See Fed. R. Civ. P. 51(d); Altemus, 32 F.R.D. at 8 (D. Del. 1963).

**NOT FOR PUBLICATION**

### IV. Curative Instruction

With regard to the evidence concerning the alleged settlement offer, the Court charged the jury:

> I have determined that the testimony and evidence relating to the settlement offer of Mr. Kim is not longer relevant to you. You are to disregard any and all evidence relating to discussions or evidence or testimony concerning the settlement offer which is found, I think, in exhibit 135, and also again in 136. And you are not to use it to determine any issue in the case.

(Transcript.)

As has been noted, the Court has broad latitude in deciding whether to grant a motion for a new trial because a jury instruction is allegedly insufficient. The Third Circuit generally "presume[s] that the jury will follow a curative instruction unless there is an 'overwhelming probability' that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." United States v. Newby, 11 F.3d 1143, 1147 (3d Cir.1993). See United States v. Hakim, 344 F.3d 324, 330 (3d Cir. 2003).

Plaintiff asserts that there did here exist an "'overwhelming probability' that the jury [would] be unable to follow the curative instruction, and a strong likelihood that the evidence would be 'devastating'" to Otos Tech. (Otos Tech. Br. at 21.) Nevertheless, Otos Tech's counsel made no objection to this charge at trial. Under Rule 51, he cannot challenge it now.

Furthermore, because the limiting instruction was precise and the evidence presented as to the alleged settlement offer was only one part of the defendants' case at trial, the Court rejects plaintiff's assertions that there was an overwhelming probability that the jury would be incapable of following the instruction. Nor does the Court believe that the evidence related to the

13

**NOT FOR PUBLICATION**

settlement offer had much potential to devastate Otos Tech's case.[2]  The Court finds that the instruction given the jury was adequate.

### V. Doctrine of Unclean Hands

Otos Tech argues that a new trial is required because the doctrine of unclean hands precluded the jury from finding that Otos Tech breached the implied covenant.  According to Otos Tech, the jury's finding that OGK converted $587,755.05 precludes the jury from granting equitable relief to OGK.  According to Otos Tech: "[c]onversion is the same act as embezzlement or, put simply, stealing.  It is hard to find a person with dirtier hands than a thief." (Otos Tech. Br. at 24.)

While Otos Tech did nominally assert the affirmative defense of unclean hands in its answer to the counterclaim and third-party complaint, Otos Tech did not identify the issue in the pretrial order, in its trial brief, in its summary judgment briefs, during the trial, or in its charging requests.  If it desired to include the affirmative defense in the jury instructions, it had ample opportunity to make that request.  See Fed. R. Civ. P. 51(d); Jackson, 252 F. Supp. at 532 ("When counsel omits to make timely requests for charge and omits, as well, to object to the failure of the trial judge so to instruct, the failure to instruct may not be assigned as error.").  Otos Tech chose not to present the jury with the question of whether equity precluded OGK from prevailing on its implied covenant claim.  Instead, having chosen to abandon this equitable defense during the course of litigation, Otos Tech asks the Court nullify the jury's verdict.  This

---

[2]Nor did the evidence of the alleged settlement offer actually have any devastating effect, since it is obvious that the jury did not use it as a defense to Otos Tech's conversion and breach of contract claims.

**NOT FOR PUBLICATION**

the Court will not do.

### VI. Implied Covenant Charge

Otos Tech argues that the jury should have been "specifically charged that, in the absence of a contract, there cannot be a breach of the implied covenant of good faith and fair dealing." (Otos Tech Br. at 25.) While the instructions did not expressly state that a jury must have found that a contract existed to find that the implied covenant was breached, the instruction clearly implied that was the case:

> In every contract there is an implied duty of good faith and fair dealing. In essence, it means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . . The law implies a requirement that each party to a contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract. This implied agreement is part of the contract. To act in good faith and deal fairly, the parties must act honestly toward each other when performing or enforcing a contract. The parties shall not do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

(Jury Charge.) See Williston on Contracts, 63:22, at 513-14 (Lord ed. 2002) (cited in Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 544 (N.J. Super. A.D. 2005). The jury could not reasonably have have found that Otos Tech breached the implied covenant without finding that a contract existed between the parties. The " charge, taken as a whole, properly apprised the jury of the issues and the applicable law," Smith, 147 F.3d at 275, and so was proper. Moreover, Otos Tech's counsel did not offer an alternative charge, and did not object the charge's formulation at trial. Since he did not do so, he is foreclosed from claiming error now. Jackson, 252 F. Supp. at 532.

Otos Tech also maintains that the Court should have charged the jury that "they cannot

15

**NOT FOR PUBLICATION**

find a literal breach of the contract and a breach of the implied covenant of good faith and fair dealing based on the same conduct." (Otos Tech Br. at 25.)  Otos Tech contends that the jury must have found that Otos Tech violated the implied covenant because Otos Tech terminated its relationship with OGK in violation of the agency agreement.  Therefore, the jury should have determined that Otos Tech literally violated the agreement, not the implied covenant, by terminating its relationship with Otos Tech.  However, as the Court has noted above, there exist numerous grounds for the jury's finding that Otos Tech breached the implied covenant aside from its breach of the express contract.

      Finally, Otos Tech argues that the "jury also should have been instructed that if they found a breach of the implied covenant of good faith, they must find the contract had a fifteen year duration." (Otos Tech Br. at 27.)  This argument is based on Otos Tech's belief that the jury must have found that Otos Tech violated the implied covenant by breaching the agency agreement.  As has been extensively discussed, this conclusion was not legally or factually necessary.

## CONCLUSION

      For the reasons discussed, it is ordered that the plaintiff's motion for a new trial is denied.

      s/ William H. Walls
      United States Senior District Judge