# CONNELL FOLEY LLP

## ATTORNEYS AT LAW

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM*
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. MCAULEY
PETER J. PIZZI*†
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. MCBRIDE*
JEFFREY W. MORYAN
JOHN K. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. MCGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPFF†
PATRICK J. HUGHES*†
JAMES C. MCCANN*
JOHN D. CROMIE
ANGELA A. IUSO*
GLENN T. DYER

CLARENCE SMITH, JR.*
WILLIAM T. MCGLOIN*
BRENDAN JUDGE
CHARLES J. HARRINGTON III†
DAREN S. MCNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY F. VITIELLO*†
MARC D. HAEFNER
JONATHAN P. MCHENRY
JAMES P. RHATICAN*†
MATTHEW W. BAUER*
BRAD D. SHALIT*
W. NEVINS MCCANN*
THOMAS J. O'LEARY*
MITCHELL W. TARASCHI
BARBARA M. ALMEIDA*

COUNSEL
JOHN W. BISSELL
JOHN B. LA VECCHIA
VIRGINIA M. EDWARDS*
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
STEVE BARNETT*
KARIN I. SPALDING*
JODI ANNE HUDSON*
CORNELIUS J. O'REILLY*
RICHARD A. JAGEN
NANCY A. SKIDMORE*
THOMAS M. SCUDERI*

ELIZABETH M. TRANTINA*
M. TREVOR LYONS*
CRAIG S. DEMARESKI*
ELIZABETH W. EATON
JOSEPH M. MURPHY
JASON E. MARX*
MICHAEL A. SHADIACK
OWEN C. MCCARTHY
PATRICIA A. LEE*†
DOUGLAS J. SHORT*
JAMES M. MERENDINO
MICHELE T. TANTALLA*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON*
HECTOR D. RUIZ*
NEIL V. MODY*
ROBERT A. VERDIBELLO*
MICHAEL J. ACKERMAN*
MELISSA A. ZAWADZKI*
MEGHAN C. GOODWIN*
MATTHEW S. SCHULTZ*
JENNIFER C. CRITCHLEY*
PATRICK S. BRANNIGAN*
MATTHEW I. GENNARO*
DANIELA R. D'AMICO*
DANIA BILLINGS MURPHY*
CHRISTINE I. GANNON*

PHILIP W. ALLOGRAMENTO III*
CATHERINE G. BRYAN†
JAMES C. HAYNIE*
LAURIE B. KACHONICK*
MICHAEL D. RIDENOUR
MEGAN M. ROBERTS*
ANDREW C. SAYLES*
SARAH B. BLUMBERG†
STEPHEN D. KESSLER*
CHRISTOPHER ABATEMARCO*
AARON M. BENDER
WILLIAM D. DEVEAU*
DANIEL B. KESSLER*
CONOR F. MURPHY
MEGHAN B. BARRETT*
NICOLE B. DORY*
PATRICK E. DURING
CHRISTIAN J. JENSEN*
JOSEPH A. VILLANI, JR.*
LEE B. WILSON
ANDREW B. BUCKMAN
JENNIFER E. CONSTANTINOU
CHRISTOPHER M. HEMRICK
SUSAN KWIATKOWSKI
MONICA SETH

**85 LIVINGSTON AVENUE**
**ROSELAND, N.J. 07068-3702**
**(973) 535-0500**
**FAX: (973) 535-9217**

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-0050

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

PLEASE REPLY TO ROSELAND, NJ

*ALSO ADMITTED IN NEW YORK
†ALSO ADMITTED IN PENNSYLVANIA

November 7, 2008

Honorable William H. Walls
United States District Court
District of New Jersey Newark
M.L. King, Jr. Federal Bldg. & Courthouse
50 Walnut Street, Room 4046
Newark, New Jersey 07102

**Re:** **Otos Tech Co., Ltd. v. OGK America, Inc. and Yale Kim a/k/a Youngil Kim**
**District Docket No.: 03-1979 (WHW)**
**Third Circuit Docket Nos.: 07-3627 and 07-3775**

Dear Judge Walls:

     This firm represents Defendants-Appellees OGK America, Inc., Yale Kim a/k/a Youngil Kim (collectively "OGK") in the above-referenced matters. This letter is in response to the November 3, 2008 judgment of the Third Circuit Court of Appeals (the "Third Circuit Judgment"), which affirmed Your Honor's August 13, 2007 judgment in the above referenced action commenced in the District of New Jersey (the "District Court Judgment") and remanded this matter for an award of post-judgment interest. *See* Third Circuit Judgment and District Court Judgment attached hereto as Exhibits A and B, respectively. We write to Your Honor to request that the District Court take action to prevent a manifest injustice by enjoining the collection on a duplicative judgment in South Korea.

By way of background, the above referenced action was commenced in the District Court by Plaintiffs/Counterclaim Defendants and Third Party Defendants, Otos Tech Co., Ltd., Otos Optical Co., Ltd., and Moon Young Huh (collectively "Otos").  This matter arose as a result of Otos' termination of an oral contract between Otos and OGK pursuant to which OGK acted as Otos' exclusive agent for the sale of welding helmets in the United States in exchange for a commission in the amount of a percentage of Otos' annual sales.  After Otos had wrongfully terminated this commission agreement, Otos brought suit against OGK alleging claims for breach of contract, conversion and embezzlement.  *See* Docket No. 1 (Complaint).[1]  In response, OGK brought counterclaims against Otos and a third party complaint against Otos Optical and Mr. Huh for breach of contract, breach of the implied covenant of good faith and breach of a compromise agreement.  *See* Docket No. 7 (Answer).  After a trial on the merits, the jury made the following findings: (1) Otos had made out its claim for breach of contract, but no damages were awarded; (2) Otos had made out its claim for conversion and was awarded $587,775.05; and (3) OGK had made out its claim for breach of the implied covenant of good faith and fair dealing and was awarded $910,000.00 in damages.  *See* Docket No. 43 (Jury Verdict).  Consequently, Your Honor initially entered judgment on August 11, 2006 codifying the jury's verdict.  *See* District Court August 11, 2006 judgment attached hereto as Exhibit C.  Subsequently, Otos filed a motion for a new trial and Your Honor denied Otos' motion.  *See* Docket No. 49 (Motion for New Trial) and Exhibit B (District Court Judgment).

As Your Honor may recall, at the same time as this action was progressing in the District of New Jersey, Otos filed an identical action in South Korea and subsequently obtained a judgment for $587,775.05 and post-judgment interest of 20% in that suit.  *See* South Korean Judgment attached hereto as Exhibit D.  On February 28, 2006 Otos then filed a motion before the District Court seeking an Order enforcing the duplicative South Korean judgment.  *See* Docket No. 24 (Motion to Enforce).  In its brief in support of that motion Otos, itself, admitted that "exactly the same issues are in controversy and are testified to in both cases".  Docket No. 24.2 at 4 (Brief In Support of Motion to Enforce).  Though recognizing the duplicative nature of the South Korean action, Your Honor issued an order denying Otos' motion because that matter was on appeal.  *See* Docket No. 28 (Order Denying Motion to Enforce).  Notwithstanding this Court's denial of that motion, Otos continued to seek to enforce the duplicative judgment in South Korea and, at the same time, continued pursing the action in the District of New Jersey.

After losing on its motion for a new trial in the District of New Jersey, Otos next appealed the District Court Judgment to the Third Circuit Court of Appeals.  OGK in turn filed a cross appeal.  After substantial briefing and oral argument, the Third Circuit affirmed Your Honor's judgment denying Otos' motion for a new trial.  *See* Exhibit A (Third Circuit Judgment).  However, the Third Circuit Judgment remanded this matter to Your Honor "for the addition of post-judgment interest on $322,244.95 in favor of [OGK]."  *Id.*  The amount – $322,244.95 – referenced in the Third Circuit Judgment represents the difference between the jury award of $587,775.05 to Otos on its claim for conversion and the award of $910,000.00 to OGK for its claim for breach of the implied covenant of good faith and fair dealing.  Therefore, the end result of the jury verdict and the District Court Judgment was for Otos to pay OGK $322,244.95 as a result of its breach of the implied covenant of good faith and fair dealing.  On appeal, the Third Circuit recognized that OGK should also be entitled to post-judgment interest on that amount.  *See* Exhibit A (Third Circuit Judgment).

---

[1] Hereinafter "Docket No." refers to entries on the docket in the District Court, Civil Action No. 03-1979.

In spite of the decisions of the jury, Your Honor and the Third Circuit, Otos continues its efforts to be paid twice by seeking collection on the South Korean Judgment.  However, if Otos is entitled to duplicative judgments in both the United States and South Korea in addition to 20% post-judgment interest on the South Korean Judgment, then the intent of the jury, Your Honor and the Third Circuit will be frustrated.  That is, instead of OGK being paid $322,244.95 – the difference between $587,775.05 (Otos award) and $910,000.00 (OGK award) – and post-judgment interest thereon, OGK would have to pay Otos $587,775.05 in addition to 20% interest for the South Korean Judgment.  This would result in a net loss to OGK despite OGK having won the case and having achieved a positive judgment that is larger than the two identical judgments obtained by Otos.  Such a result would thwart the work of the jury, Your Honor and the Third Circuit in resolving this matter and would, moreover, result in a manifest injustice.

Therefore, OGK respectfully requests that Your Honor's Order on remand consider the implications of Otos' actions and that an injunction be crafted in such a manner to prevent this injustice.  One resolution would be the entry of an Order that not only allows OGK to recover $322,244.95 and the post-judgment interest that it is entitled to, but also enjoins Otos from enforcing or collecting on the duplicative South Korean Judgment.[2]  In the alternative, OGK has also submitted a writ of execution in the full amount of OGK's jury award – $910,000 – in an attempt to cancel out the South Korean judgment and the 20% post-judgment interest on that award.  *See* Writ of Execution attached hereto as Exhibit E.[3]  The Writ was filed in an attempt to collect on OGK's judgment and prevent Otos' deceptive actions pending resolution of this matter by the Third Circuit.  However, because this matter is again before Your Honor on remand, OGK respectfully requests that the Court address Otos' action to enforce its duplicative South Korean judgment.

OGK would appreciate the opportunity for a case management conference with Your Honor to discuss the options for final resolution of this matter. The Court's attention to this matter is appreciated.

Very truly yours,

s/Marc D. Haefner

Marc D. Haefner

MDH/NBD/dxm
Enclosures

cc:   Mr. Peter Pearlman

---

[2] Should the Court require a more formal submission, OGK would file the appropriate motion.
[3] OGK would have to file an additional Writ of Execution, however, to include the post-judgment interest in accordance with the Third Circuit Judgment.

# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 07-3627 & 07-3775

_____

OTOS TECH CO., LTD.

v.

OGK AMERICA, INC.;
YALE KIM a/k/a Youngil Kim,
                                    Third Party Plaintiffs

v.

OTOS OPTICAL CO., LTD.;
MOON YOUNG HUH,
                                    Third Party Defendants
_____

OTOS TECH CO., LTD.; OTOS OPTICAL CO., LTD; MOON YOUNG HUH,
                                    Appellants in 07-3627

OGK AMERICA, INC.; YALE KIM,
                                    Appellants in 07-3775

_____

On Appeal from the United States District Court
For the District of New Jersey
(Civ. No. 03-1979)
District Court Judge: Honorable William H. Walls

_____

Argued on September 22, 2008

_____

Before: BARRY, AMBRO and GARTH, *Circuit Judges,*

### JUDGMENT

This cause came to be heard on the record from the District Court of New Jersey and was argued on September 22, 2008.  On consideration whereof, it is now here

ORDERED and ADJUDGED by this Court that the District Court's judgment of August 13, 2007 be and the same is hereby AFFIRMED with the exception of post-judgment interest.  We therefore REMAND for addition of post-judgment interest on $322,244.95 in favor of appellees.

Costs to be taxed against the appellant Otos Tech Co., Ltd.

All of the above in accordance with the Opinion of this Court.

ATTEST:

/s/Marcia M. Waldron,
Clerk

Dated:       October 10, 2008

Certified as a true copy and issued in lieu
of a formal mandate on   11/03/08

Teste:  *Marcia M. Waldron*
**Clerk, U.S. Court of Appeals for the Third Circuit**

# EXHIBIT B

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OTOS TECH CO., LTD., | : | |
| | : | |
| Plaintiff | : | ORDER |
| | : | |
| v. | : | Civ. No. 03-1979 (WHW) |
| | : | |
| OGK AMERICA, INC. and YALE KIM | : | |
| A/K/A YOUNGIL KIM | : | |
| | : | |
| Defendants | : | |
| | : | |

<u>Walls, Senior District Judge</u>

It is on this 13th day of August, 2007,

Ordered that the plaintiff's motion for a new trial be denied.

s/ William H. Walls
United States Senior District Judge

# EXHIBIT C

Case 2:03-cv-01979-WHW-RJH   Document 45   Filed 08/11/2006   Page 1 of 1

# UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

OTOS TECH CO., LTD.

   -vs-

OGK AMERICA, INC.

**JUDGMENT IN A CIVIL CASE**

Civil 03-1979

     This action came before the Court for a trial by jury. The issues were tried and the jury rendered its verdict.

     By its verdict, the jury established that a judgment be entered in favor of the plaintiff Otos Tech Co. Ltd. in the amount of $587,755.05 against the defendant OGK America, Inc., with prejudice.

IT IS FURTHER ORDERED that judgment be entered in favor of defendant OGK America, Inc. on the counterclaim in the amount of $910,000.00 against the plaintiff Otos Tech Co. LTD. with prejudice and costs.

DATE August 10, 2006

HON. WILLIAM H. WALLS

# EXHIBIT D

# A & A TRANSLATION

## -Approved by the NJ State Courts
## Member of ATA, NAJIT

*546 Valley Rd.*
*Upper Montclair*
*New Jersey, USA 07043*

*Phone (973) 783-4938 / 744-3004*
*Fax (973) 744-2521*

This is to certify that the attached document is accurately and truthfully translated from **KOREAN** into **ENGLISH**, thereof to the best of my knowledge, ability and belief, based upon the original document.

DATE: *February 14*, 2006
SIGNATURE: *O. O. Dang*
NAME:   Ok-Soon Dang
Director of A & A T

Sworn to and Subscribed to
Before Me this *14th* day
of *February*, 2006.

*Joseph A. Fortunato*
Attorney at Law

Joseph A. Fortunato
Attorney At Law
546 Valley Rd.
Montclair, NJ 07043

# THIS IS AN ORIGINAL COPY.

THE SUPREME COURT OF KOREA

2005.

## AHNSAN BRANCH, THE SOOWON DISTRICT COURT

DEPUTY COURT CLERK, JONG KI HONG

CIVIL LAW SUIT REGULATION, ARTICLE NO. 162, PARAGRAPH (3)

* If you do not agree with this judgment, you must submit an appeal to Ahnsan Branch of the Soowon District Court within 2 weeks of the date of service of the original copy of this judgment.

**AHNSAN BRANCH, THE SOOWON DISTRICT COURT**

**CIVIL DIVISION, PART 1**

**JUDGMENT**

CASE         2005 GA HAB999 (CLAIM) RETURN OF UNJUST ENRICHMENT

                   2005 GA HAB1664 (COUNTER CLAIM) RESTITUTION AWARD

PLAINTIFF (DEFENDANT ON THE COUNTER CLAIM) OTOS TECH CO., LTD.

                   GEUMCHUN-GU, GASAN-DONG 234-12, SEOUL

                   REPRESENTATIVE DIRECTOR    MOON YOUNG HUH

                   REPRESENTING ATTORNEY    SEUNG RYONG KANG

DEFENDANT (PLAINTIFF ON THE COUNTER CLAIM)    YOUNG IL KIM

                   OGK AMERICA INC. 111 CHARLOTTE PLACE #303, ENGLEWOOD CLIFFS,

                   NJ 07632, USA

                   SERVICE LOCATION. DANWON-GU, GOZAN-DONG 670, JOOGONG APT

                   706-DONG 207-HO, AHNSAN-SI (37-TONG 3-BAN)

                   REPRESENTING ATTORNEY KWAN WOO PARK

CLOSING ARGUMENT      12/2/2005

SENTENCING       12/16/2005                                    /(Seal)/

                                                                                   FILE

                                                                                   No.

                                                                                   12/30/2005

                                                                                   K.E.Y.

                                                                                   LAW OFFICE

## ORDER

1.    As to 607,156,665.00 won, the Defendant (the Plaintiff on the counter claim) shall pay at the rate of annual interest rate of 5% from 4/1/2005 to 12/16/2005, then annual interest 20% from the following day until it is paid off in full.

2.    Each of the remaining claim by the Plaintiff (the Defendant on the counter claim) and the counter claim by the Defendant (the Plaintiff on the counter claim) shall be dismissed.

3.    The Plaintiff (the Defendant on the counter claim) shall be responsible for 1/10 of the lawsuit costs, and the Defendant (the Plaintiff on the counter claim) shall be responsible for the remaining.

4.    The Paragraph No. 1 may be provisionally executed.

## PURPOSE OF CLAIM

CLAIM:   The Defendant (the Plaintiff on the counter claim, hereinafter 'Defendant') shall pay the Plaintiff (the Defendant on the counter claim, hereinafter, 'Plaintiff') 697,340,655.00 won from the following date of the service date until the last date of pay off at the annual interest rate of 20%.

COUNTER CLAIM:   The Plaintiff shall pay the Defendant 512,245.00 USD at the annual interest rate of 5% from 2/6/2003 to 4/14/2005, and 20% from the following date to the date of pay off.

## CAUSE

### 1.   BASIC FACTS

Each of the following facts may be stipulated when there is no difference between each party, or with addition of the [illegible] of the argument to each statement

- 2 -

on 1 of evidence No. 2, EXBHIT. A, 1 of evidence No. 3 EXBHIT. A, 2 of evidence No. 3

EXBHIT. A (identical with evidence No. 3 EXBHIT. B), 3 of evidence No. 6 EXBHIT. A

(identical with 1 & 2 of evidence No. 27 EXBHIT. B), evidence No. 11~14 EXBHIT. A

(including each of [illegible] no.), evidence No. 20 EXBHIT. A, evidence No. 21 EXBHIT.

A, 1 & 2 of evidence No.1 EXBHIT. B, 1 & 2 of evidence No. 2 EXBHIT. B, 1 & 2 of

evidence No. 5 EXBHIT. B, 1 & 2 of evidence No. 8 EXBHIT. B, evidence No. 9 EXBHIT

B, 1 & 2 of evidence No. 10 EXBHIT. B, evidence No. 14 EXBHIT. B, each statement of

1~4 of evidence No. 26 EXBHIT. B, testimony of witness Hae Myung Lee, part of my

(defendant's) interrogatory outcome.

A.   The Plaintiff is a Korean corporation, which manufactures industrial products, such

as welding masks, and the Defendant is a representative director of a New York

corporation, OGK, America, Inc. (hereinafter, 'OGK').

B.   In and around November, 1998, the Plaintiff made an oral agreement to recognize

the Defendant, a representative director of the said corporation and OGK as exclusive

agent in the US for the Plaintiff. Accordingly, OGK sold welding masks manufactured by

the Plaintiff in the US from 1999 to 12/31/2002, in exchange for 4% of the commission

of the gross sales amount in 1999, 2000 and 2001 and 3% in 2002.

C.   Miller Electric Manufacturing Company (hereinafter, 'Miller') and Hobart Retail

Sales are companies in the US that purchased the welding masks from the Plaintiff.

When Miller and Hobart made purchase orders to OGK, OGK delivered the said

purchase orders to the Plaintiff, who then shipped welding masks directly to the Miller

and Hobart along with a commercial L/C. Then Hobart of Miller issued a check payable

to OGK for the direct payment, which was delivered to the Plaintiff with an endorsement

by OGK. After the Plaintiff received the payment, the Plaintiff paid the commission to

'Based upon the contents of the email dated 2/5/2003, I understand that you wish
to dissolve our future relationship, and I wish to dissolve it as follows:

    1.   Upon the custom of International Commerce Regulations and trading
transaction, I believe that my right to profits has been infringed in an inappropriate way
and I have a right to claim for the expected profit of at least 5 years, according to
custom. However, I would like to resolve the transaction at just 3 years' claim, since I
do not wish to prolong it further.'

    2.   I understand that you have agreed to it, and I'll deduct the said amount from
the existing uncollected payment.'

H.   Subsequently, on 2/6/2003 the Plaintiff sent Miller and Hobart the following email:

    'Concerning the agency relation with Young Il Kim, we have decided not to
continue it any longer by mutual consent. Therefore, we wish you to contact us directly
for business matters if it's possible. Furthermore, please note that we wish to receive
payment directly from your company, made payable to OTOS TECH CO., LTD., instead
of to OGK.'

    ('Regarding agency connection with Yale Kim, we no more business to agency
connection with Yale Kim by mutual agreement. So, if you possible, we would like to
communication to business with us directly for the present.
(otos@otos.co.kr & Kevin@otos.co.kr)   Also we would like to receive to your
payment(check) as Receiver : OTOS Tech Co., Ltd. instead of OGK America
INC.')

I.   The Defendant sent Miller and Hobart an email as follows after he received the

- 5 -

email that was written by the Plaintiff on 2/6/2003 from Miller and Hobart on the same date.

'As your company received an email from Kevin (referring to Deputy Manager Hae Myung Lee, a staff member of the Plaintiff) of OTOS TECH CO., LTD. I do not wish to represent OTOS TECH CO., LTD. any longer. While Mr. Moon Young Huh (Representative Director of the Plaintiff) and I have been a conflict of opinion over certain matters for the last month, we decided not to work together in the future. However, Mr. Moon Young Huh first notified your company even before he reached a clear agreement with me in certain respects. For this reason, your company forwarded all purchase orders to OGK. Therefore, concerning the uncollected payment, I would like to request you to send checks to our company until I will otherwise notify you. Please be advised that all current POs will be performed by OTOS Tech Co. and you may issue new POs to OTOS Tech Co. directly from now on.'

(As you received e-mail from Kevin, I don't want to represent OTOS any more. However, I will be representing OGK same as before. Moon Huh and myself have been in conflict in some matters during the last month and we decided not to work together in the future. However, he didn't make some matters clear and noticed to you before our clear agreement in this regard, I am asking you to send all payment checks to OGK America Inc as you issued POs to OGK America, Inc. until the time I will notice you. All current Pos will be performed by OTOS and you may issue new POs to OTOS Tech from now on.')

J. In response to the above e-mail of paragraph I, Miller and Hobart replied on February 11th, 2003, stating that they would pay the Plaintiff directly for any further procurement, but the checks for the products already

- 6 -

procured will be issued to OGK.

K. The Defendant did not endorse and remit the checks issued by Miller and Hobart to OGK as payments for Plaintiff's welding masks, but instead cashed all of them by March 21st, 2003 and refused to return them. The scope of checks is as follows, totaling USD 587,135.35(= 235,496 Dollars + 10,019 Dollars + 4,839.5 Dollars + 11,583.3 Dollars + 213,432.8 Dollars + 18,800 Dollars + 51,600 Dollars + 15,400 Dollars + 25,964.75 Dollars).

(1) Checks issued by Miller:   Check of USD 235,496.00 issued on 12/19/2002 (Check No. 142195), Check of USD 10,019.00 issued on 12/5/2002 (Check No. 141936), Check of USD 4,839.30 issued on 12/16/2002 (Check No. 142418), Check of USD 11,583.30 issued on 2/13/2003 (Check No. 142758),

(2) Checks issued by Hobart:   Check of USD 213,432.80 issued on 1/17/2003 (Check No. 10672), Check of USD 18,800.00 issued on 2/20/2003 (Check No. 10798), Check of USD 51,600.00 issued on 2/20/2003 (Check No. 10799), Check of USD 15,400.00 issued on 2/20/2003 (Check No. 10797), Check of USD 25,964.75 issued on 2/27/2003 (Check No. 10818).

L. The Plaintiff demanded that the Defendant return the export payments as listed in paragraph K. on February 27th, 2003, but the Defendant replied to the Plaintiff that an agreement was made between the Plaintiff and the Defendant to end their agency relationship by deducting 3-year's worth of expected profits from said uncollected payment, and claimed that he already received the expected profits from the above export payment and could not comply with the Plaintiff's demand on March 3rd, 2003. The Plaintiff sent e-mails demanding the return of export payments on March 11th, 18th, and 26th 2003.

M.   The Plaintiff filed the lawsuit, case no. 03-1979 at the United State District

- 7 -

Court/District of New Jersey against the Defendant and OGK, demanding the payment of 587,755.05 Dollars as well as a punitive damage in relation to the above lawsuit claiming embezzlement, payment demand for product sales, breach of contract as well as improper conversion. In response, the Defendant and OGK filed an answer, a counter claim, and a 3rd party claim citing breach of contract, breach of the agreement dated February 5th, 2003, a compensation demand for the provided labor, and violation of the principle of a mutual trust.

## 2. The Decision on the Defendant's Answer

### A. The Defendant's Argument

The Defendant argues that this lawsuit constitutes a duplicate lawsuit and is therefore improper, since the Plaintiff already filed a lawsuit with identical claims against the Defendant in the US Federal Court in New Jersey currently proceeding, and the ruling of this US Federal Court case would surely be followed in accordance with the Article 217 of the Korean Civil Proceeding Law.

### B. Decision

Article 259 of the Korean Civil Proceeding Law does not include foreign courts, so there are no legal grounds for restricting international duplicate lawsuits.

Furthermore, the reason duplicate lawsuits are prohibited within Korea is that the ruling of one court on one case is uniformly enforced everywhere in Korea once finalized; therefore filing duplicate lawsuits on cases already in progress or on identical facts is uneconomical and has no merit to the parties involved or to the court, and different rulings could conflict with each other in their enforcement. However, the issue of accepting rulings made by foreign courts follows the specific procedure for accepting their effectiveness in other countries in cases of

- 8 -

international duplicate lawsuits, but acceptance procedures are different between each country and the rulings of foreign courts are not necessarily uniformly accepted; therefore, there are no actual grounds for prohibiting international duplicate lawsuits.

In addition, it is difficult to judge whether the subject of claim in a domestic lawsuit filed in a domestic court is identical with the subject of claim currently pending in a foreign court, and it is difficult to predict whether the outcome of a foreign trial would meet the specific requirements of Article 217 of the Civil Proceeding Law, and is especially impossible to judge in advance their compliance with Clause No. 3, that is if acknowledging the decision of a foreign court is in line with the custom and social order of the Republic Of Korea, so it is improper to restrict the lawsuit filed at a domestic court citing the possibility of approval of a foreign court decision.

Therefore, this court does not find that the lawsuit filed at a domestic court for a case already in proceeding in a foreign court constitute a duplicate lawsuit and can be prohibited, therefore there is no reason to examine the Defendant's argument that this lawsuit filed at this court by the Plaintiff constitutes a duplicate lawsuit, is therefore improper, and must be dismissed.

## 3. The Decision On The Case

### A. Arguments of Each Party and Points in Contention.

#### (1) The Plaintiff's Argument

(A) The Defendant did not remit to the Plaintiff but embezzled the checks (Totaling USD 587,135.35) received from Miller and Hobart as export payments, which constitutes an unjust enrichment.

(B) Subsequently, the Defendant cashed all the checks, which he was no longer able to return the Plaintiff the above-mentioned checks; therefore the Defendant shall repay to the

Plaintiff a sum equivalent to the total amount of said checks, USD 587,135.35.

(C) Hence, the Plaintiff demands a reimbursement of 697,340,655.00 Won (Korean Won) calculated by applying an exchange rate of February 27th, 2003 (1,187.70 Won to 1 Dollar) against the Defendant's unjust enrichment of USD 587,135.35, as well as a delayed reimbursement cost compensation calculated at 20% per year from the following date of April 1st, 2005, the date of service of the complaint, until the pay off date of all outstanding payment.

**(2) The Defendant's Argument**

(A) Even though the Defendant played an active role as the exclusive US-marketing agent of the Plaintiff, the Plaintiff demanded that the Defendant to lower the commission rate to 2.5% in December, 2002. When the Defendant, accordingly, proposed on January 28th, 2003 to agree to the lowering of the commission rate to 2.5% in exchange for Plaintiff's signing of a 5-year agency contract, whose term started in 2003, the Plaintiff notified the Defendant not to get involved in handling of Miller and Hobart business, as well as notifying that the Plaintiff would directly handle said duties to severe their current relationship on February 5th, 2003. Accordingly, the Defendant agreed to Plaintiff's demand of the agency contract dissolution on the same day, and informed the Plaintiff of the Defendant's intention to deduct 3-year's expected profits from the export payment yet to be remitted to the Plaintiff as a compensation for this improper dissolution of contract without proper compensation for the marketing know-how obtained through the Defendant's efforts made so far and a justifiable cause on the same day. Therefore, the following day, the Plaintiff informed Miller and Hobart of their decision not to continue an agency relationship with Young Il Kim upon mutual consent.

(B) As above, the Plaintiff did not wish to maintain the agency contract with the Defendant without a justifiable reason, and implicitly agreed to the Defendant's fair compensation proposal,

- 10 -

and informed Miller and Hobart of the dissolution of their relationship upon mutual consent. Therefore, the Defendant argues that there was a stipulation to end the exclusive agency relationship between the Plaintiff and the Defendant, and to allow the Defendant to deduct the 3-year's expected profits from the export payment checks to be remitted from the Defendant to the Plaintiff. Since the minimum projected sales of Plaintiff were $11 million in 2003, $14 million in 2004, and $16 million in 2005, the sum of this three year's sales is $41 million USD ($11 million + $14 million + $16 million), and the calculated commission at 3% rate is $1,230,000.00 USD (=$41,000,000.00 x 3%).

(C) The Defendant argues that the Defendant did not remit the checks received as export payments amounting to USD 587,755.00 {Although the export payment to be collected from Miller and Hobart was USD 587,755.00, $619.70 was deducted by Hobart due to product defects, so the actual amount on the checks that the Defendant collected as export payment was USD 587,135.34(= $587,755.00 − $619.70) received as export payment. However, the Defendant mistakenly claimed the amount of received checks were USD 587,755} to the Plaintiff and collected it in accordance with the above arrangements, which does not constitute a collection without a legally justifiable cause, and demands payment of the remaining outstanding sum of $512,245.00 (= $1,100,000.00 − $587,755.00) plus the cost of delay compensation as calculated at 5% annually from February 6th 2003 to the date of the counter claim mailing (April 14th, 2005), and 20% annually thereafter until the date of paid in full.

### (3) Point of Contention

The point of contention in this case is whether an arrangement in which the Defendant

deduct 3-year's expected profits from the export payment checks to be remitted to the Plaintiff

after the dissolution of an exclusive agency relationship was established between the Plaintiff

and the Defendant.

**B. The Decision**

　　(1) On February 5, 2003, the Plaintiff sent the Defendant a fax stating that 'I wish you

(Managing Director Kim) not to get involved in the business until the agency relationship is

resolved at the following meeting. Concerning the commission contract, we have no desire to

sign for now. We will handle the business with Miller and Hobart directly for now, but we have

not informed Miller of the above fact yet. We believe it would be good for the Defendant to

inform Miller and Hobart directly.' Furthermore, the Defendant sent a fax dated February 5th,

2003 in response to the above fax stating that 'I understand that you desire to end our relation

judging by the e-mail dated February 5th, 2003, and I end our future relationship as follows.

1. In accordance with international commerce regulations or trade custom, I have been deprived

of economic gains that I deserve by improper means, so I have the right to demand 5-year's

expected profit in accordance with customaries, but I will end this relationship by collecting only

3-year's worth because I do not wish to prolong this dispute any longer.

2. I understand you agree to this, and I will deduct the above-mentioned amount from the

existing uncollected payments.' Subsequently, the Plaintiff sent an e-mail to Miller and Hobart

stating that 'Concerning the agency relationship with Yong Il Kim, I would like to inform you that

we decided not to continue our relationship by mutual consent. Therefore, we wish to

communicate with you directly concerning business matters.' on February 6th, 2003. The fact

that Miller and Hobart relayed this message to the Defendant on the same date, and the fact

that the Plaintiff demanded the return of export payment checks to the Defendant on the 27th, 22

days after receiving the Defendant's e-mail dated February 5th, 2003, are as previously

stipulated.

(2) As we consider on the content and form of the e-mails exchanged between the Plaintiff and the Defendant, we cannot accept the Defendant's argument that the Plaintiff's notification of the agency relationship dissolution to Miller and Hobart cannot be constituted as the Plaintiff's expression of his intention directed at the Defendant, even if those messages were relayed to the Defendant. We also cannot accept that the Plaintiff implicitly agreed to the Defendant's demands of compensation for 3-year's expected profits just because the Plaintiff did not immediately express his disagreement on the above mentioned fax dated February 5th, 2003 and delayed the demand to return the export payment until the 27th of the same month, nor is there any other evidence that establishes the fact that the Plaintiff and the Defendant made an agreement to end their agency relationship, to let the Defendant receive a 3-year's worth of expected profits from the Plaintiff, and to deduct this sum from the export payment that Defendant was supposed to remit to the Plaintiff.

(3) The Plaintiff rather sent the Defendant an e-mail proposing to lower the commission rate to 2.5% on January 6th, 2003, and an agreement to lower the commission rate to 2.5% was established by the Defendant who sent an e-mail response stating that the Defendant agreed to the lowering of the commission rate the following day, January 7, 2003. On February 3rd, 2003, the Defendant requested the Plaintiff via e-mail to send a signed contract with an attached commission contract stating that the commission rate was to be set at 2.5%, the term of contract to be effective from January 1st, 2003 to December 31st, 2007, and the contract be automatically reviewed for another 3 years when either party does not notify the termination of contract in writing and make an agreement before September 31st, 2007. We stipulate the following facts to be true; in response to the above-mentioned e-mail, the Plaintiff sent an e-mail rejecting this demand on February 4th, 2003; and that the Plaintiff sent an e-mail demanding the Defendant to temporarily suspend his agency duty

on February 5th, 2003; the fact the Plaintiff desired to receive the payments directly by changing the recipient of the shipping payment from OGK to the Plaintiff in the Plaintiff's e-mail sent to Miller and Hobart to notify the news of the agency relationship's termination between the Plaintiff and Defendant on February 6th, 2003; the fact that the Defendant told Miller and Hobart via e-mail that, 'As stated in the e-mail that your company received from Kevin of OTOS Tech Co., I do not wish to represent OTOS Tech Co. any longer. Mr. Moon Young Huh and I had our differences over several issues for the past month, and decided not to work together. However, he notified you first before we made a clear agreement on a few things. For this reason, I would like to request that you send all payment checks to OGK America Inc. until my further notice is sent out, as you issued POs to OGK America Inc. all outstanding POs will be handled by OGK, but you can issue any new PO to OTOS Tech Co. from now on'; the fact that Miller replied that the further purchases would be paid to the Plaintiff directly, but would issue the payment checks to OGK for the already purchased products in its e-mail dated February 11th, 2003 in response to the Plaintiff's e-mail dated February 6th, 2003; and the fact that Plaintiff sent e-mails demanding the return of the above export payment on March 11th, 18th, and 26th, 2003, are as previously stipulated.

   Based on the above stipulated facts, ① it is clear that the Plaintiff did not demand that the Defendant halt his agency duties when the Plaintiff unilaterally demanded the lowering of the commission rate to 2.5% and the Defendant proposed to the Plaintiff in his reply that he would agree to this new commission rate of 2.5% in exchange for a signed contract with a contract period of 5 years, but demanded the Defendant to halt his agency duties AFTER the adjustment of the commission rate to 2.5% was agreed upon by the Plaintiff and the Defendant on January 7th, 2003, and then the Defendant subsequently demanded that the Plaintiff guarantee the contract for a period of 5 years, on February 3rd, 2003. Rejecting this Defendant's demand, the Plaintiff demanded that the Defendant stop performing his agency duties. Referring to the fact

that the Defendant demanded that the Plaintiff guarantee the agency contract period for 5 years, there never was an agreement to guarantee the Defendant's agency status nor there was any specified contract period, implying that the contract would be over when one of the two parties no longer wished to be engaged in it; the fact that the Plaintiff demanded the Defendant to temporarily halt his agency duties shows that the Plaintiff stopped the execution of agency duties until an agreement was made because the discussion between the Plaintiff and the Defendant concerning the commission rate and the contract duration wasn't going smoothly, so it cannot be said that the Plaintiff improperly terminated the contract; ② In the e-mail that the Defendant sent to Miller and Hobart, it is claimed that the Defendant's notification that he wished to have the shipping payment recipient to be changed from himself to the Plaintiff was contradictory to the Defendant's demand of deducting 3-year's worth of expected profits an agreed compensation from uncollected payments, we can infer that the Plaintiff did not agree to the above-mentioned demand by the Defendant. The Defendant also informed Miller and Hobart of not continuing their agency relationship, but stated that the Plaintiff informed them of this decision without making a clear agreement on certain outstanding issues. Based upon these e-mail communications, we can conclude that the Defendant was also aware of the fact that he and the Plaintiff agreed upon the principle of contract dissolution, but without an agreement on issues of Defendant receiving 3-year's expected profit from the Plaintiff after the dissolution of the agency contract.

③ We also can infer that the Plaintiff could not possibly foresee that the Defendant would withhold the product payment checks without remitting them to the Plaintiff after a unilateral notification from the Defendant, when there was no agreement between the Plaintiff and the Defendant on the issue of the Defendant being compensated for 3-year's expected profits, even if the Defendant notified the Plaintiff that he wished to be compensated for 3-year's worth of expected profits and would deduct this sum from uncollected payments on February 5th, 2003, and the Plaintiff was informed by Miller and Hobart that the payment checks for the already

purchased products would be issued to OGK after notifying Miller and Hobart of the fact that the agency relationship between the Plaintiff and the Defendant was dissolved by mutual agreement, and demanded to pay the Plaintiff directly. Therefore, we cannot accept that there was an agreement just because the Plaintiff demanded the return of export payments some time later, on February 27th, 2003 under these circumstances. Furthermore, the Plaintiff already expressed his disagreement to deducting 3-year's worth of expected profit from the above export payment by demanding that Miller send the product payment to the Plaintiff directly in an e-mail dated February 6th, 2005, and the Defendant was already aware of this by receiving the relayed Plaintiff's e-mail.

(4) Therefore, we cannot accept the claim that there was a stipulation for the Defendant to receive 3-year's worth of expected profits, and this expected profits be deducted from the export payments that Defendant was to remit to the Plaintiff. Therefore, the Defendant has an obligation to return the unjust enrichment amounting to USD 587,135,35.00 equivalent to the amount of total sum of checks. Accordingly, there are no merits in the Defendant's answer and counterclaims.

## C. The Calculation of Unjust Enrichment

Although the Plaintiff argues the exchange rate applied in this case should be the exchange rate of the day the Plaintiff demanded the Defendant return the export payments, February 27th, 2003, when claiming the converted sum in Korean currency equivalent to unjust enrichment of USD 587,135.35, it is appropriate to interpret Article 378 of the Korean Civil

- 16 -

Proceeding Law referring the exchange rate of the day of repayment to be applied when dealing

with a debt denominated in a foreign currency but repaid in Korean currency when considering

the intention of Article 378 of the Korean Civil Proceeding Law using the term "when repaying"

which is distinguished from the expression "maturity" in Article 376 and Article 377 Clause 2.

Accordingly, when a creditor exercises his/her rights to an alternate collection and claims a sum

in Korean currency, the court should order the application of the foreign currency exchange rate

of the date closest to the date of oral proceeding closure and apply the exchange rate as of the

date of this trial's oral proceeding, December 2nd, 2005, at 1,034.1 Won to USD 1, so the sum of

unjust enrichment that the Defendant must pay back to the Plaintiff is 607,156,665.00 Won (=

USD 567,135.35 x 1,034.1 Won, the sum below 1 Won is rounded off).


4. Conclusion

Therefore, the Defendant has an obligation to repay the sum of the unjust enrichment of

607,156,665.00 Won and interest calculated at a 5% annual interest rate during the period in

which the Defendant has the rights to contest the determination of existence and scope of his

obligations from the following date of this lawsuit's official delivery on the record, April 1st, 2005,

to the date of this ruling's delivery December 16th, 2005, and a 20% annual rate from the date

after this ruling to the date of full repayment, in accordance with the demand of the Plaintiff, the

court applies the above accepted scope, and dismisses the remaining claims and counterclaims

filed by the Defendant since there is no cause found.


CHIEF JUDGE   JONG MOON PARK _____

JUDGE BYUNG HEE OH _____

JUDGE JI HYUN MIN _____

- 18 -

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey  07068
(973) 535-0500
Attorneys for Defendants,
OGK America, Inc. and Yale Kim a/k/a Youngil Kim

| | |
|---|---|
| OTOS TECH CO., LTD., | Civil Action No.: 03-1979 (WHW) |
| Plaintiff, | |
| v. | |
| OGK AMERICA, INC. & YALE KIM A/K/A YOUNGIL KIM, | WRIT OF EXECUTION |
| Defendants/Third-Party Plaintiffs | |
| v. | |
| OTOS TECH CO., LTD. And MOON YOUNG HUH | |
| Third-Party Defendants | |

**TO THE MARSHAL OF THE UNITED STATES DISTRICT COURT, DISTRICT OF NEW JERSEY:**

**WHEREAS,** judgment was entered on the day of the 11th day of August, 2006 in an action in the United States District Court, District of New Jersey between Otos Tech Co., Ltd., plaintiff(s) and OGK America, Inc. & Yale Kim a/k/a Youngil Kim, defendant(s) in favor of said defendants and against said plaintiff for the sum of $ 910,000 as appears by the judgment filed in the Office of the Clerk of the United States District Court, District of New Jersey; and

**WHEREAS,** the said judgment was duly entered in the Office of the Clerk of the United States District Court, District of New Jersey, and the sum of $ 910,000 is now actually due thereon;

**THEREFORE,** you are hereby commanded to satisfy the said judgment out of the personal property of the said judgment debtor, as set forth in the attached affidavit, and if sufficient personal property cannot be found, then out of the real property belonging to such judgment debtor at the time said judgment was entered in the Office of the Clerk of this Court, or at any time thereafter, in whosoever hands the same may be, as set forth in the attached affidavit and that you do pay the moneys realized by you from such property directly to said or to their attorney in the said action, and return this execution and your proceedings thereon within one (1) year after date of

its issuance to the Clerk of the United States District Court, District of New Jersey.

**WE FURTHER COMMAND YOU**, that in case of a sale, you make return of this writ with your proceedings thereon before said Clerk and pay to the Clerk of this Court any surplus in your hands within thirty (30) days after said sale.

**WITNESS**, the Honorable _____, a Judge of the United States District Court, District of New Jersey this _____ day of _____, 19___.

William T. Walsh, Clerk
United States District Court


Deputy Clerk


Prepared By:

CONNELL FOLEY LLP
Attorneys for Defendants,
OGK America, Inc. and Yale Kim a/k/a Youngil Kim

BY: _____
Marc D. Haefner

Levy:
Damages.........$ 910,000

**Besides Marshal's Execution Fees**

1976856-01

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey  07068
(973) 535-0500
Attorneys for Defendants,
OGK America, Inc. and Yale Kim a/k/a Youngil Kim

| | |
|---|---|
| OTOS TECH CO., LTD.,<br><br>    Plaintiff,<br><br>       v.<br><br>OGK AMERICA, INC. & YALE KIM<br>A/K/A YOUNGIL KIM,<br><br>    Defendants/Third-Party Plaintiffs<br><br>       v.<br><br>OTOS TECH CO., LTD. And MOON<br>YOUNG HUH<br><br>    Third-Party Defendants | Civil Action No.: 03-1979 (WHW)<br><br><br><br>AFFIDAVIT |

County of Essex:
State of New Jersey:

Marc D. Haefner being duly sworn, says:

1.      I am the attorney for judgment creditor in the matter of Otos Tech Co., Ltd. vs. OGK America, Inc. and Yale Kim a/k/a Youngil Kim, Civil Action No. 03-1979, and in that capacity and in conformance with N.J.S. 2A:17-1, et. seq., as made applicable to this case by Rule 69(a), Fed. R. Civ. P., I have caused to be conducted an examination of the assets of judgment debtor Otos Tech Co., Ltd.

2.      I have determined the following non-exempt personal property of the judgment debtor is subject to execution in satisfaction of the judgment therein:

PROPERTY DESCRIPTION
Account(s) of  Miller Electric Mfg. Co.
Payable to Otos Tech Co., Ltd.
and/or Moon Young Huh

PROPERTY LOCATION
Miller Electric Mfg. Co.
c/o The Corporation Trust Company
820 Bear Tavern Road
West Trenton, New Jersey 08628

3.    I have determined the following non-exempt real property of the judgment debtor is subject to execution in satisfaction of the judgment therein:

PROPERTY DESCRIPTION        PROPERTY LOCATION

Marc D. Haefner    (Signature)

Subscribed and Sworn before me this
16ᵗʰ day of _September_ , 20 08.

Notary of _____

My Commission Expires
DOROTHY STAMBOULIAN
A Notary Public of New Jersey
My Commission Expires Sept. 1, 2009

RETURNABLE ON OR BEFORE

Recorded in the Clerk's Office of the United States District Court for the District of New Jersey in Book _____ of Executions, Page _____.

William T. Walsh, Clerk

By:_____
Deputy Clerk

1976856-01

U.S. Department of Justice
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF<br>Otos Tech Co., Ltd. | COURT CASE NUMBER<br>03-1979 (WHW) |
|---|---|
| DEFENDANT<br>OGK America, Inc. and Yale Kim a/k/a Youngil Kim | TYPE OF PROCESS<br>Personal |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

Miller Electric Mfg. Co. c/o The Corporation Trust Company

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

820 Bear Tavern Road, West Trenton, New Jersey 08628

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| Marc D. Haefner, Esq.<br>CONNELL FOLEY LLP<br>85 Livingston Avenue<br>Roseland, New Jersey 07068 | Number of process to be served with this Form 285 | 1 |
| | Number of parties to be served in this case | 1 |
| | Check for service on U.S.A. | N/A |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

Fold                                                                                       Fold

| Signature of Attorney other Originator requesting service on behalf of: *Marc D. Haefner* | ☐ PLAINTIFF<br>☒ DEFENDANT | TELEPHONE NUMBER<br>973-535-0500 | DATE<br>9/2/08 |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin<br>No. | District to Serve<br>No. | Signature of Authorized USMS Deputy or Clerk | | Date |
|---|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|---|
| Address *(complete only different than shown above)* | | Date | Time | ☐ am<br>☐ pm |
| | | Signature of U.S. Marshal or Deputy | | |

| Service Fee | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*)<br><br>**$0.00** |
|---|---|---|---|---|---|

REMARKS:

1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 12/15/80
Automated 01/00

# UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

OTOS TECH CO., LTD.

  -vs-

OGK AMERICA, INC.

**JUDGMENT IN A CIVIL CASE**

Civil 03-1979

      This action came before the Court for a trial by jury. The issues were tried and the jury rendered its verdict.

      By its verdict, the jury established that a judgment be entered in favor of the plaintiff Otos Tech Co. Ltd. in the amount of $587,755.05 against the defendant OGK America, Inc., with prejudice.

IT IS FURTHER ORDERED that judgment be entered in favor of defendant OGK America, Inc. on the counterclaim in the amount of $910,000.00 against the plaintiff Otos Tech Co. LTD. with prejudice and costs.

DATE August 10, 2006

HON. WILLIAM H. WALLS